EARTHCAM, INC.,

            **Plaintiff,**

    **v.**

OXBLUE CORPORATION et al.,

            **Defendant.**

**1:11-cv-2278-WSD**

## OPINION AND ORDER

This matter is before the Court on the OxBlue Defendants' Partial Motion to Dismiss Second Amended Complaint [125] ("OxBlue Defendants' Motion to Dismiss") and Defendant Richard Hermann's Partial Motion to Dismiss [144] ("Hermann's Motion to Dismiss").

## I.    BACKGROUND

### A.    Procedural History

In this action, Plaintiff EarthCam, Inc. ("Plaintiff" or "EarthCam"), a camera technology company, alleges that its competitor, Defendant OxBlue Corporation ("OxBlue"), engaged in various forms of corporate espionage to misappropriate Plaintiff's technologies and customers.  Defendants are OxBlue, OxBlue officers Chandler McCormack ("McCormack"), John Paulson ("Paulson"), and Bryan

Mattern ("Mattern"), and former EarthCam employee Richard Hermann ("Hermann"). In its Second Amended Complaint [117], filed November 6, 2012, Plaintiff asserts the following claims: misappropriation of trade secrets against all Defendants (Count I); conspiracy to misappropriate trade secrets against all Defendants (Count II); copyright infringement against all Defendants (Count III); violation of the Computer Fraud and Abuse Act ("CFAA") against OxBlue, McCormack, Paulson, and Mattern (collectively, the "OxBlue Defendants") (Count IV); conspiracy to violate the CFAA against all Defendants (Count V); breach of contract against Hermann (Count VI); and tortious interference with contractual relations against the OxBlue Defendants (Count VII).

On November 20, 2012, the OxBlue Defendants filed their Motion to Dismiss certain claims on the ground that the claims are barred by their respective statutes of limitations: the misappropriation of trade secrets and conspiracy to misappropriate trade secrets claims, in Counts I and II, based on the alleged "brute-force attack" of Plaintiff's computer system in March and April 2006; the copyright infringement claims, in Count III, based on alleged actions that occurred before July 12, 2008; and the CFAA claims, in Counts IV and V, based on alleged actions that occurred before July 12, 2009. The OxBlue Defendants do not seek dismissal of claims in Counts I through V that are based on other alleged actions,

and they do not seek dismissal of Plaintiff's tortious interference with contractual relations claim in Count VII.

On December 20, 2012, Hermann filed his Motion to Dismiss (i) the claim for conspiracy to violate the CFAA, in Count V, on the ground that Plaintiff failed to allege "loss" or "damage" caused by a CFAA violation, and (ii) the claim for breach of contract, in Count VI, on the ground that the alleged contract, a covenant not to compete ancillary to an employment agreement, is not enforceable under Georgia law. Hermann does not seek dismissal of any other claims asserted against him.

B.    Relevant Factual Allegations

EarthCam, headquartered in Hackensack, New Jersey, and OxBlue, headquartered in Atlanta, Georgia, compete in the business of selling remote camera products and services. (See 2d Am. Compl. [117] ¶¶ 1–2, 9–11.) Plaintiff alleges that, after it launched a new "Robotic Megapixel Camera system" in November 2005, the OxBlue Defendants "embarked on . . . a 'secret mission' to appropriate trade secrets behind" the new system. (See id. ¶¶ 12–13.) To achieve this goal, Plaintiff alleges, the OxBlue Defendants engaged in a series of unauthorized intrusions into Plaintiff's computer systems for the purpose of accessing and copying proprietary information. The earliest of the alleged

3

intrusions occurred in March and April 2006, when the OxBlue Defendants launched a "brute-force attack" of the EarthCam system from a BellSouth IP address and a Comcast IP address (70.90.75.50), sending 428,494 messages to EarthCam's servers. (See id. ¶¶ 38–40.) On numerous other occasions, from February 2008 to May 2011, Plaintiff alleges that the OxBlue Defendants gained unauthorized access to EarthCam's systems by using the login credentials of EarthCam customers. (Id. ¶¶ 41–58.)

In response to OxBlue's intrusions, EarthCam "assembled a number of senior engineers and other high-level employees to evaluate damage to EarthCam's systems," which EarthCam claims cost it more than $5,000 in "opportunity costs and actual expense." (Id. ¶¶ 59–60.) Also, by May 2011, EarthCam "had created an internal security policy specifically to deny access to anyone attempting to access EarthCam's systems from OxBlue's office's IP address." (Id. ¶ 51.)

In October 2006, Hermann, an EarthCam employee, reached out to McCormack to discuss possible employment with OxBlue. (Id. ¶ 15.)[1] Over the

---

[1] Hermann, a New Jersey resident, began his employment with EarthCam in September 2005. (See 2d Am. Compl. [117] ¶¶ 6, 14.) On July 10, 2006, Hermann and EarthCam entered into an employment contract (the "Employment Agreement") containing covenants not to compete, non-solicitation provisions, and non-disclosure provisions. (See id. ¶ 14; Hermann's Ex. A [144-2].) The Employment Agreement was entered into in New Jersey and contains a choice-of-law provision providing that the "Agreement shall be governed by, and construed

next three years, Plaintiff alleges that Hermann, at the OxBlue Defendants' request, stayed employed at EarthCam and provided OxBlue with numerous confidential documents, copyrighted works, and trade secrets.  (See id. ¶¶ 15–28.) After ending his employment with EarthCam in June 2008, Hermann became an independent contractor of OxBlue, and Plaintiff claims he solicited EarthCam customers in violation of his Employment Agreement with EarthCam.  (See id. ¶¶ 28–30.)

## II.     DISCUSSION

### A.     Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences."  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010).  Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true."  Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (1996)).  The Court is not required

---

in accordance with, the laws of the State of New Jersey."  (Hermann's Ex. A [144-2] ¶ 17.)

to accept conclusory allegations and legal conclusions as true.  See Am. Dental

Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft

v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570)).  Mere "labels and

conclusions" are insufficient.  Twombly, 550 U.S. at 555.  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  This requires more than

the "mere possibility of misconduct."  Am. Dental, 605 F.3d at 1290 (quoting

Iqbal, 556 U.S. at 679).  The well-pled allegations must "nudge[] their claims

across the line from conceivable to plausible."  Id. at 1289 (quoting Twombly, 550

U.S. at 570).

B.    OxBlue Defendants' Motion to Dismiss

In their Motion to Dismiss, the OxBlue Defendants argue that certain claims

in the Second Amended Complaint are limited or barred by the respective statutes

of limitations, specifically the misappropriation of trade secrets claims and

conspiracy to misappropriate trade secrets claims based on the alleged "brute-force

attack" occurring in March and April 2006; the copyright infringement claims based on alleged actions occurring before July 12, 2008; and claims based on alleged violations of the CFAA occurring before July 12, 2009.

      1.    *Misappropriation of Trade Secrets and Conspiracy to Misappropriate Trade Secrets (Counts I and II)*

A claim for misappropriation of trade secrets "must be brought within five years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." O.C.G.A. § 10-1-766 (2009). Under this provision, "a plaintiff must exercise reasonable diligence to discover any misappropriation of trade secrets," and the limitations period begins to run when the plaintiff has "reason to suspect that a trade secret has been misappropriated, and a reasonable investigation would produce facts sufficient to confirm this suspicion (and justify bringing suit)." Porex Corp. v. Haldopoulos, 644 S.E.2d 349, 353 (Ga. Ct. App. 2007) (quoting Alamar Biosciences, Inc. v. Difco Labs., Inc., No. Civ-S-941856 DFL PAN, 1995 WL 912345, at * (E.D. Cal. Oct. 13, 1995)).

Defendants first argue that Plaintiffs' trade secret claims based on the alleged brute-force attack are time-barred because they were required to have been filed within five years after the alleged incident occurred or, in this case, by March

2011.[2]  The Court disagrees.  Under the plain language of the statute, the

limitations period began to run when Plaintiff "discovered or by the exercise of

reasonable diligence should have . . . discovered" the misappropriation.  See

O.C.G.A. § 10-1-766.  That is, the limitations period does not necessarily run from

the date of an occurrence alleged where reasonable diligence would not have

disclosed an incident or those responsible for it.  See id.; Porex, 644 S.E.2d at 353.

Defendants next argue that the brute-force attack claims are time-barred

because the Second Amended Complaint lacks sufficient factual allegations to

show that Plaintiff "exercised diligence" in discovering the attack.  In other words,

Defendants argue that Plaintiff failed to plead facts showing when the limitations

period began to run.  A plaintiff generally does not bear the burden of negating the

affirmative defense of the statute of limitations in its complaint.  La Grasta v. First

Union Sec., Inc., 358 F.3d 840, 846 (11th Cir. 2004) ("A statute of limitations bar

is an affirmative defense, and plaintiffs are not required to negate an affirmative

---

[2] The parties agree that Plaintiff's claim for conspiracy to misappropriate trade
secrets is dependent on Plaintiff's underlying claim for misappropriation of trade
secrets and that the timeliness of the former therefore depends on the timeliness of
the latter.  See Dyer v. Honea, 557 S.E.2d 20, 25 (Ga. Ct. App. 2001); Alta
Anesthesia Assocs. of Ga., P.C. v. Gibbons, 537 S.E.2d 388, 394 (Ga. Ct. App.
2000); see also GTAS Asset Solutions, LLC v. African Methodist Episcopal
Church, Inc., No. 1:11-CV-1148-RWS, 2012 WL 3637452, at *10 (N.D. Ga. Aug.
22, 2012) (dismissing "derivative conspiracy claims" where underlying fraud
claims were untimely).

defense in their complaint."). "A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." <u>Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp.</u>, 522 F.3d 1190, 1194 (11th Cir. 2008) (quoting <u>Tello v. Dean Witter Reynolds, Inc.</u>, 410 F.3d 1275, 1288 (11th Cir. 2005)) (internal quotation marks omitted); <u>accord</u> <u>LaGrasta</u>, 358 F.3d at 845; <u>Omar ex rel. Cannon v. Lindsey</u>, 334 F.3d 1246, 1251–52 (11th Cir. 2003). Plaintiff's failure to plead specific facts showing how and when it discovered the brute-force attack is not a basis for dismissal. <u>See</u> <u>Omar</u>, 334 F.3d at 1251–52.

Defendants finally argue that Plaintiff's pleadings show that Plaintiff knew, or should have known, of the brute-force attack more than five years before the filing of this action. To support this argument, Defendants point to allegations in the Complaint, Amended Complaint, and Second Amended Complaint that Plaintiff enacted certain security measures in response to the attack:

> OxBlue's actions did not go unnoticed. EarthCam's security detected the entries from OxBlue's Internet Protocol (IP) address. EarthCam created an internal security policy to specifically deny access to anyone attempting to access EarthCam's systems from OxBlue's office's Internet Protocol ("IP") address.

and

> On May 20, 2011, from 5:04 P.M. to 5:29 P.M., an OxBlue employee attempted to login with the customer's credentials from OxBlue's

offices, but was foiled by EarthCam's security policy, which detected
and denied access to entries from OxBlue's IP address. EarthCam had
created an internal security policy specifically to deny access to
anyone attempting to access EarthCam's systems from OxBlue's
office's IP address.

(Compl. [1] ¶ 26; Am. Compl. [15] ¶ 26; 2d Am. Compl. [117] ¶ 51.) Defendants

further point to the "extremely specific" detail regarding the attack alleged in the

Second Amended Complaint, including that Defendants "sent 428,494 messages"

from a specific IP address. (See Defs.' Reply [146] at 5 (citing 2d Am. Compl.

[117] ¶ 40).)

Contrary to Defendants' argument, Plaintiffs' pleadings do not show, on

their face, that Plaintiff was aware, or should have been aware, of the March and

April 2006 brute-force attack more than five years before the filing of this case.

The allegations Defendants cite show, at most, that Plaintiff was aware of the

incident, and had implemented security measures in response to it, by May 20,

2011—less than two months before Plaintiff filed this action. Based on the record

before the Court, and giving Plaintiff "the benefit of reasonable factual inferences,"

see Wooten, 626 F.3d at 1196; Tello, 410 F.3d at 1288, the Court does not find that

Plaintiffs' claims based on the brute-force attack are time-barred, and Defendants'

motion to dismiss these claims is required to be denied.[3]

## 2.  *Copyright Infringement (Count III)*

A claim for copyright infringement must be "commenced within three years after the claim accrued."  17 U.S.C. § 507(b) (2006).  Defendants argue that, under this statute of limitations, Plaintiff's claims based on alleged copyright infringements occurring before July 12, 2008—three years before the filing of this action—are untimely.  In its opposition to the OxBlue Defendants' Motion to Dismiss, Plaintiff argues only that its infringement claims of conduct occurring on or after July 12, 2008, are timely.  Plaintiff specifically identifies three alleged infringements based on conduct occurring on or after July 12, 2008: Hermann's alleged transmission to OxBlue of certain information (referred to by the parties as the "OxBlue003019 information") on July 18, 2008; OxBlue's access of Plaintiff's website via Benning Construction Company's account in September and October 2008; and the "2011 screen shots identified in discovery."  (See Pl.'s Opp'n Mot. Dismiss [136] at 5–6 (citing 2d Am. Compl [117] ¶¶ 42–43; 76; Aff. J. DeCraen [132-8] ¶ 11).)  Plaintiff did not respond to Defendants' argument that its claims for pre-July 12, 2008, infringements are untimely, and as a result the Court

---

[3] If the evidence shows that Plaintiff did learn of the brute-force attack, and who caused it, in March 2006, the OxBlue Defendants can ask the Court, at the appropriate time, to consider whether this claim is barred as untimely asserted.

considers Plaintiff to have abandoned such claims, and they are dismissed. See St. Andrews Presbyterian Coll. v. S. Ass'n of Colls. & Sch., 679 F. Supp. 2d 1320, 1334–35 (N.D. Ga. 2009) (citing Bute v. Schuller Int'l, Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998); Welch v. Delta Air Lines, Inc., 978 F. Supp. 1133, 1137 (N.D.Ga.1997)) ("Failure to respond to an opposing party's arguments regarding a claim constitutes abandonment of that claim, and warrants dismissal of the abandoned claim."); see also LR 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").[4]

### 3. *Violation of the CFAA and Conspiracy to Violate the CFAA (Counts IV and V)*

Civil claims based on violations of the CFAA must be brought "within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g) (Supp. V 2011). Defendants argue that, under this statute of limitations, Plaintiff's claims based on alleged CFAA violations occurring before July 12, 2009—two years before the filing of this action—are untimely. Plaintiff states that its CFAA claims are limited only to an alleged

---

[4] The OxBlue Defendants' Motion to Dismiss Plaintiff's copyright claims is limited "to the extent that Plaintiff's claims are based upon pre-July 12, 2008 activities." (See OxBlue Defs.' Br. [125-1] at 6.) Defendants do not seek dismissal of claims based on conduct occurring on or after July 12, 2008, and the Court does not consider here whether any such claims were properly pleaded.

intrusion into its computer system that was planned and occurred in 2011. The Court thus considers Plaintiff to have abandoned any CFAA claims it may have asserted based on alleged violations occurring before July 12, 2009, and those claims are dismissed. See St. Andrews, 679 F. Supp. 2d at 1334–35 (N.D. Ga. 2009); see also LR 7.1(B), NDGa.[5]

C.      Hermann's Motion to Dismiss

In his Motion to Dismiss, Hermann argues that (i) Plaintiff failed to state a claim for conspiracy to violate the CFAA because Plaintiff failed to allege "damage" or "loss" under the CFAA, and (ii) Plaintiff's claim for breach of the Employment Agreement is not valid under Georgia law.

1.      *Conspiracy to Violate the CFAA (Count V)*

To recover on a claim for conspiracy to violate the CFAA, a plaintiff must have suffered "damage" or "loss" under the statute. See 18 U.S.C. § 1030(g) (creating a cause of action for violations of the substantive provisions of the CFAA in favor of "[a]ny person who suffers damage or loss"); see also id. § 1030(e)(8) (defining "damage"); id. § 1030(e)(11) (defining "loss"). In the Second Amended

---

[5] The OxBlue Defendants' Motion to Dismiss Plaintiff's CFAA claims is limited to Counts IV and V "to the extent they each rely on allegations taking place before July 12, 2009." (See OxBlue Defs.' Br. [125-1] at 9.) Defendants do not seek dismissal of claims based on conduct occurring on or after July 12, 2009, and the Court does not consider here whether any such claims were properly pleaded.

Complaint, Plaintiff alleges that it suffered a "loss" by having to spend more than $5,000 to conduct a damage assessment in response to Defendants' intrusions into the EarthCam computer system. (See 2d Am. Compl. [117] ¶¶ 59–60, 84.) Hermann argues that these costs are not a "loss," and are therefore insufficient to plead a claim under the CFAA. Hermann argues that Plaintiff did not actually suffer "damage" because Plaintiff does not allege any harm or service interruptions to its computer system.

"Damage" under the CFAA "means any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). In other words, "damage" is harm to the computer system itself. See id. "Loss" under the CFAA is "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." Id. § 1030(e)(11). Hermann argues that, under these definitions, a "loss" based on "conducting a damage assessment" requires the existence of underlying "damage" to the plaintiff's computer system.

In interpreting a statute, the Court begins with "the language of the statute itself" and "read[s] the statute to give full effect to each of its provisions." United

States v. DBB, Inc., 180 F.3d 1277, 1281 (11th Cir. 1999). "It is a cardinal principle of statutory construction that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" Nunnally v. Equifax Info. Servs., LLC, 451 F.3d 768, 773 (11th Cir. 2006) (quoting TRW, Inc. v. Andrews, 534 U.S. 19, 31 (2001)). The Court must not "look at one word or term in isolation," but must instead "look to the entire statutory context." DBB, 180 F.3d at 1281. This means that, "[i]n addition to the 'particular statutory language at issue,' federal courts also must consider 'the language and design of the statute as a whole' to determine 'the plain meaning of the statute.'" Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1278 (11th Cir. 2005) (quoting K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988)).

Hermann's reading of the definition of "loss" requires that the last phrase— "because of interruption of service"—be interpreted to modify all of the provisions in the definition, rather than the last provision—"any revenue lost, cost incurred, or other consequential damages incurred"—to which it is attached. Under this reading, the first provisions of the definition would be wholly encompassed in the last provision and would thus be rendered meaningless. For example, "loss" would

include the cost of "conducting a damage assessment because of interruption of service" and "any cost incurred because of interruption of service."

The Court's primary duty in construing the definition of "loss" is to give each provision meaning.  See,e.g., <u>Kozak v. Hillsborough County, Fla.</u>, 644 F.3d 1347, 1349–50 (11th Cir. 2011) ("[O]ne of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . ." (quoting <u>Corley v. United States</u>, 556 U.S. 303, 314 (2009)) (alterations in original)).

Using these interpretation standards, the Court construes the definition of "loss" in § 1030(e)(11).  The definition contains two kinds of loss that may be recovered.  These are separated by the conjunctive word "and."  The portion of the definition stated before the word "and" defines "loss" as "any reasonable cost to any victim" and specifically includes the cost of "conducting a damage assessment."  <u>See</u> 18 U.S.C. § 1030(e)(11).  The definition after the word "and" includes additional items of loss to include "any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  <u>Id.</u> These additional items simply allow a victim to recover costs in addition to those

already allowed that may result from "service interruptions."[6]  The Court

necessarily concludes that a "loss" includes the cost of conducting a damage

assessment.[7]  Hermann's motion to dismiss Plaintiff's CFAA conspiracy claim is

required to be denied.

---

[6] For example, the cost to rent computer equipment as a result of a service interruption and until service is restored, which is not covered in the first part of the definition, is included in the second.

[7] This interpretation of "loss" is consistent with the interpretation reached by other district courts, including those within the Eleventh Circuit, to have decided this question.  See e.g., TracFone Wireless, Inc. v. Cabrera, 883 F. Supp. 2d 1220, 1228-29 (S.D. Fla. 2012) (holding that an offense not involving modification or disruption of the computer system constituted "damage" and "loss"); Trademotion, LLC v. Marketcliq, Inc., 857 F. Supp. 2d 1285, 1292-93 (M.D. Fla. 2012) ("[T]he Court finds 'loss' as used in the provision does not relate solely to losses incurred due to an interruption of service."); Vacation Club Servs., Inc. v. Rodriguez, No. 6:10-cv-247-Orl-31GJK, 2010 WL 1645129 at *2 n.7 (M.D. Fla. Apr. 22, 2010) ("It seems fairly clear that an interruption of service need only be alleged where the plaintiff is attempting to recover revenue lost, cost incurred, or other consequential damages—not where the plaintiff is attempting to recover, as here, any reasonable cost to any victim, including the cost of responding to an offense and conducting a damage assessment." (internal quotation marks and citation omitted)); Volk v. Zeanah, No. 608CV094, 2010 WL 318261 at *3-4 (S.D. Ga. Jan. 25, 2010) (stating that response and investigation costs could be alleged which would qualify as a "loss," even without an interruption in service).  In support of his argument, Hermann cites only cases consistent with the Court's interpretation here—holding that "damage" is required to show a "loss" under only the last provision of the definition.  See Andritz, Inc. v. S. Maint. Contractor, LLC, 626 F. Supp. 2d 1264, (M.D. Ga. 2009) (holding that plaintiff failed to show "loss" because it did not suffer "damage" or "any damages related to responding to the offense or conducting a damage assessment"); Am. Family Mut. Ins. Co. v. Rickman, 554 F. Supp. 2d 766, 770–72 (N.D. Ohio 2008) (holding that "loss" based on "any revenue lost," in the last provision of the definition, requires

## 2.    *Breach of Contract (Count VI)*

Hermann moves for the dismissal of Plaintiff's breach of contract claim, alleging a violation of the Employment Agreement, on the ground that the Employment Agreement is unenforceable under Georgia law.  Plaintiff argues that the Employment Agreement is governed by New Jersey law, under which it is enforceable.

The parties do not dispute that the Employment Agreement is unenforceable under Georgia law and enforceable, or potentially enforceable, under New Jersey law.[8]  The question before the Court, therefore, is which state's law applies.  The

_____

underlying "interruption of service"); <u>Klein & Heuchan, Inc. v. Costar Realty Info., Inc.</u>, No. 8:08-cv-1227-T-30EAJ, 2009 WL 963130, at *3 (M.D. Fla. Apr. 8, 2009) ("The plain reading of the definition of loss leads this Court to find that a plaintiff must only show an 'interruption of service' to make a claim for a loss from 'revenue lost, cost incurred, or other consequential damages incurred.'"); <u>L-3 Commc'ns Westwood Corp. v. Robicharux</u>, No. 06-0279, 2007 WL 756528, at *4 (E.D. La. Mar. 8, 2007) (holding that "loss of trade secrets and lost profits" are "losses" only if connected to "damage").

[8] The Court agrees.  The Employment Agreement includes a provision prohibiting Hermann from soliciting "any Customers" of Plaintiff, without regard to the customer's location.  (<u>See</u> Hermann's Ex. A [144-2] ¶ 3.)  Under Georgia law, this provision is *per se* unenforceable because a non-solicitation restriction that applies to "*any* client of the employer must contain a territorial restriction expressed in geographic terms."  <u>See</u> <u>Advance Tech. Consultants, Inc. v. RoadTrac, LLC</u>, 551 S.E.2d 735, 738 (Ga. Ct. App. 2001) (quoting <u>W.R. Grace & Co. v. Mouyal</u>, 422 S.E.2d 529, 532 n.3 (Ga. 1992)).  Because this provision is not enforceable, the entire Employment Agreement is unenforceable under Georgia law.  <u>See</u> <u>id.</u> at 737 (explaining that "if one of [the provisions of a covenant not to compete] is

Court applies the law called for by Georgia's choice-of-law rules, so long as the application of that law does not violate the parties' due process rights.  See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821–22 (1985); Keener v. Convergys Corp., 342 F.3d 1264, 1267–68 (11th Cir. 2003); Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)); see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 672 F.3d 155, 157 (2d Cir. 2012) ("A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." (internal quotation omitted)).

---

unenforceable, then they are all unenforceable" because Georgia law does not allow severability of provisions of employment contracts).  Under New Jersey law, by contrast, a restriction on a former employee's solicitation of "any client" is not *per se* invalid but requires a factual inquiry into the reasonableness of the restriction.  See Pierson v. Med. Health Ctrs., P.A., 869 A.2d 901, 904 (N.J. 2005) ("We continue to adhere to the case-by-case approach for determining whether a restrictive covenant in a post-employment contract is unreasonable and unenforceable. . . .  [T]he trial court must determine whether the restrictive covenant protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not adverse to the public interest.").  Moreover, if the restriction is found to be overbroad, "it may be partially enforced to the extent reasonable under the circumstances."  Davidson Bros., Inc. v. D. Katz & Sons, Inc., 579 A.2d 288, 296 (N.J. 1990) (citing Solari Indus. v. Malady, 264 A.2d 53, 60–61 (N.J. 1970)).

The Employment Agreement contains a choice-of-law provision calling for the application of New Jersey law to the interpretation and enforcement of the Agreement. Although Georgia courts generally accept choice-of-law provisions contained in contracts, choice-of-law provisions in employment contracts will not be enforced by Georgia courts if restrictive covenants in those contracts violate Georgia public policy:

> The law of the jurisdiction chosen by parties to a contract to govern their contractual rights will not be applied by Georgia courts where application of the chosen law would contravene the policy of, or would be prejudicial to the interests of, this state. Covenants against disclosure, like covenants against competition, affect the interests of this state, namely the flow of information needed for competition among businesses, and hence their validity is determined by the public policy of this state.

See Convergys Corp. v. Keener, 582 S.E.2d 84, 85–86 (Ga. 2003) (quoting Nasco, Inc. v. Gimbert, 238 S.E.2d 368, 369 (Ga. 1977)). Because, as the parties agree, the Employment Agreement at issue here is invalid as overbroad under Georgia law, Georgia's choice-of-law rules require the application of Georgia law to prevent the Employment Agreement's enforcement. See id.

Plaintiff argues that, notwithstanding Georgia's choice-of-law rules, the application of Georgia law to the Employment Agreement would violate its due process rights because the contract dispute between Plaintiff and Hermann lacks sufficient contact with the State of Georgia. In a dispute between out-of-state

parties, the application of forum law to the dispute satisfies constitutional due

process requirements only if the forum state has a "significant contact or

significant aggregation of contacts" with the dispute, and the application of the

forum state's law would not be "arbitrary or unfair." See Phillips, 472 U.S. at

821–22 (quoting Allstate Ins. Co. v. Hague, 449 U.S. 302, 312–13 (1981) (plurality

opinion)); Keener, 342 F.3d at 1267 (quoting Convergys, 582 S.E.2d at 85–86)

(explaining that Georgia law may be applied in place of the law agreed to in a

covenant not to compete "[a]fter first ascertaining that there were significant

contacts with the State of Georgia, such that the choice of [Georgia] law was

neither arbitrary nor constitutionally impermissible" (alterations in original)); see

also Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 725 n.6 (11th Cir. 1987)

(citing id.) ("[E]ven if Georgia law would require application of its own common

law rules to some claims . . . , the law of Georgia could be applied consistent with

due process only if the particular transaction had some significant relation to

Georgia."). "When considering fairness in this context, an important element is

expectation of the parties." Phillips, 472 U.S. at 822 (citing Allstate, 449 U.S. at

333 (opinion of Powell, J.)).

　　Plaintiff, a New Jersey-based company, and Hermann, a New Jersey

resident, entered into the Employment Agreement in connection with Hermann's

employment in New Jersey. The Agreement expressly provides for the application of New Jersey law. The only connection between the parties and the State of Georgia, with respect to the Employment Agreement, is that Hermann allegedly breached the Employment Agreement by supplying certain information to OxBlue, a Georgia-based company, and performed certain work "with or for" OxBlue.[9] (See 2d Am. Comp. [117] ¶ 94.) These contacts with Georgia, unilateral on the part of Hermann, are not "significant" and do not show that either party ever had an expectation that Georgia law would govern their Employment Agreement. See Phillips, 472 U.S. at 822 (holding that the application of Kansas law to contracts entered into between out-of-state parties did not satisfy due process because "[t]here is no indication that when the [contracts] were executed, the parties had any idea that Kansas law would control"); Eye Laser Care Ctr. LLC v. MDTV Med. News Now, Inc., No. 07-4788 (KSH), 2009 WL 1916331, at *5–6 (D.N.J.

---

[9] Because Hermann's choice-of-law argument is presented in a motion to dismiss under Rule 12(b)(6), the Court limits its analysis to the facts alleged in the Second Amended Complaint. See, e.g., Garfield v. NDC Health Corp., 466 F.3d 1255, 1260 n.2 (11th Cir. 2006). The Court notes that the full record currently before the Court does not support that either party expected that Hermann would ever conduct business in Georgia. (See, e.g., Dep. R. Hermann [150-1] ("I'd never move to Atlanta to get a job. I don't—I'll never leave my son.").) If the record established after the completion of discovery shows "significant contacts" with Georgia, Hermann is not precluded from then seeking the application of Georgia law to the Employment Agreement in an appropriate motion.

June 30, 2009) (holding that a covenant not to compete, entered into by a Florida-based employer and a Florida resident employee, could not be governed by forum law because the parties' "only reasonable expectation" was that Florida law, not forum law, would govern); see also Keener, 342 F.3d at 1267–68 (finding that the application of Georgia law to a covenant not to compete was constitutionally permissible because the employee was "living and working in Georgia, where the effects would be felt").  When EarthCam and Hermann entered into the Employment Agreement, they expected and agreed that New Jersey law would govern any claimed violation of it.  It is not reasonable to conclude that either EarthCam or Hermann expected or intended one or more of the other forty-nine states' laws would apply because one party's breach of the Agreement might be directed toward one or more other states.  The Court concludes that the application of Georgia law to the Employment Agreement here would not satisfy the requirements of due process, and Hermann's motion to dismiss the breach of contract claim is required to be denied.

## III.    CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the OxBlue Defendants' Partial Motion to Dismiss Second Amended Complaint [125] is **GRANTED IN PART** and

**DENIED IN PART**.  It is **GRANTED** with respect to copyright infringement claims, asserted against the OxBlue Defendants in Count III of the Second Amended Complaint, based on alleged copyright infringements occurring before July 12, 2008, and it is **GRANTED** with respect to CFAA violation claims, asserted against the OxBlue Defendants in Counts IV and V of the Second Amended Complaint, based on alleged CFAA violations occurring before July 12, 2009.  It is **DENIED** with respect to all other claims.

      **IT IS FURTHER ORDERED** that Defendant Richard Hermann's Partial Motion to Dismiss [144] is **DENIED**.

      **SO ORDERED** this 18th day of July, 2013.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE