## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**EARTHCAM, INC.,**

               **Plaintiff,**

      **v.**

**OXBLUE CORPORATION,
CHANDLER McCORMACK,
JOHN PAULSON, BRYAN
MATTERN, and RICHARD
HERMANN,**

               **Defendants.**

                                   **1:11-cv-02278-WSD**

## OPINION AND ORDER

This matter is before the Court on Plaintiff EarthCam, Inc's ("EarthCam")

Motion for Summary Judgment [232], Defendant Richard Hermann's Motion for

Summary Judgment ("Hermann") [230], Defendants OxBlue Corporation's,

Chandler McCormack's, John Paulson's, and Bryan Mattern's (collectively, the

"Oxblue Defendants") Motion for Summary Judgment [228], and EarthCam's

Motion to Reopen Discovery [237].

# I.     BACKGROUND

## A.     Facts

### 1.     The Parties

In this action, EarthCam alleges that its competitor, OxBlue Corporation ("OxBlue"), engaged in various forms of corporate espionage to misappropriate its trade secrets.  OxBlue has filed counterclaims against EarthCam for copyright infringement, trademark infringement, false advertising, false designation of origin, unfair competition, and violation of the Georgia Uniform Deceptive Trade Practices Act.

EarthCam is a privately held company, based in New Jersey, that markets and sells high-end web-based camera systems, including traditional security applications, megapixel robotic panoramic cameras, and high-definition streaming video devices.  OxBlue is a company based in Atlanta that offers high-end web-based camera systems and streaming video technology.  OxBlue's primary client base is the construction industry, and its remote camera monitoring products are utilized in a variety of construction projects.

Defendant Chandler McCormack ("McCormack") is the President and Chief Executive Officer of OxBlue.  Defendant Bryan Mattern ("Mattern") is the Chief Technology Officer of OxBlue.  Defendant John Paulson ("Paulson") is a silent

financial partner of OxBlue.[1]  Hermann is a former employee of EarthCam.

Between 2005 and June 2008, Hermann worked at EarthCam as a product

technician and camera installer of robotic megapixel cameras.  After ending his

employment with EarthCam, Hermann became an independent contractor of

OxBlue.

> 2.   *OxBlue Defendants' Motion for Summary Judgment*

> i.   The 2006 "Brute Force" Attack

In March and April of 2006, Defendant Mattern wrote a script to collect

information available on the webpages of EarthCam's customers.  Mattern

described the script as a "very small script that any CS 101 person or anybody

could have written."[2]  Mattern Dep. at 245: 5-7.  The script created over 400,000

Uniform Resource Locator ("URL") combinations to estimate the current URL

---

[1] On November 6, 2012, EarthCam filed a Second Amended Complaint, in which it
alleged that Paulson was the Chief Financial Officer of OxBlue.  Second Am.
Compl. at 2.  In their Motion for Summary Judgment, the OxBlue Defendants
stated that Paulson only has a financial stake in OxBlue, and he has never worked
for OxBlue.  EarthCam does not contest that Paulson has never served as an officer
or employee of OxBlue.

[2] CS 101 appears to be a reference to Computer Science 101, and meant to mean a
basic course taken by computer science majors in college.  There is no dispute that
any person with a basic understanding of Linux and the programming language, C,
could conduct the so-called "brute force" attack that occurred on EarthCam's
servers.  Linux is a free, open source, operating system, popular among computer
programmers, and C is a general-purpose computer programming language.

combination and location of an EarthCam's customer's webpage. EarthCam alleges that OxBlue utilized the script to gather confidential information on its customers, including customer names, camera names, images from customer cameras, the URL to the image for each camera, and the date and time stamped on the last image taken from a camera. There is no dispute that the basic script written by Mattern did not involve decrypting a password or otherwise breaking into any secure server. EarthCam's Vice President of Technology, Bill Sharp, admitted at his deposition that the information gathered by the OxBlue Defendants during the so-called "brute-force" attack was not password protected. See Sharp Dep. at 107: 11-17.[3]

---

[3] On November 18, 2013, Mr. Sharp submitted an affidavit to the Court, in which he makes several assertions that contradict his prior testimony and other evidence in this case. For example, Mr. Sharp now states in his affidavit that "in 2006 the nonpublic portions of EarthCam's website were protected by URLs with a series of two four digit numerical combinations. Authorized access to these URLs was only through entry of a username or password." Sharp Aff. at ¶ 26. A "court may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 (11th Cir. 2003). The Court disregards Mr. Sharp's affidavit to the extent his assertions are contradicted by his testimony or other evidence in this case. Even if the Court considered Mr. Sharp's new assertions, there is no evidence that the script employed by the OxBlue Defendants in 2006 was aimed at decrypting passwords for customer accounts.

ii.     Access to Customers' Webpages

On September 10, 2008, Paulson received a username and password from Benning Construction ("Benning"), an EarthCam client, for Benning's EarthCam customer webpage.  Paulson forwarded to McCormack an email containing Benning's login credentials.  EarthCam claims the OxBlue Defendants used the login credentials they received from Paulson to access information on Benning's customer webpage.  EarthCam has not presented any evidence to support this claim.

On May 20 and May 21, 2011, Chip Foley of Forrest City Ratner ("FCR"), an EarthCam client, provided FCR's login credentials for its customer webpage to the OxBlue Defendants to determine whether OxBlue could provide a solution to certain issues it had encountered with EarthCam's cameras.  Foley initially provided a series of screenshots from FCR's EarthCam account to the OxBlue Defendants.  Foley also sent to OxBlue a screenshot from one of FCR's cameras. The forwarded information was not enough for OxBlue to troubleshoot and advise FCR on its problems.  As a result, Foley sent FCR's login credentials to OxBlue. The OxBlue Defendants logged into FCR's account, and provided Foley with three possible solutions to the problem FCR had encountered.  Two of those solutions did not involve using OxBlue's services.  FCR took OxBlue's advice into

consideration, and continued to do business with EarthCam.  After logging into FCR's EarthCam account, Correy Potts, an OxBlue employee, took screenshots from FCR's webpage, and provided a link to a directory containing the screenshots to OxBlue's marketing department.  EarthCam has not presented any evidence that the marketing department ever viewed the screenshots, or that OxBlue used the screenshots to develop its products or otherwise use them in its business.

EarthCam's customers are required to enter into an End User License Agreement ("EULA") that prohibits the unauthorized access, display, and copying of EarthCam's information.  The EULA does not prohibit EarthCam's customers from sharing their passwords with a third party, and there is no evidence that the OxBlue Defendants knew any of the EULA's provisions when they logged into the FCR account.  On October 15, 2012, Mr. Sharp admitted at his deposition that the EULA is presented to the customer when the customer first logs into his or her account, and it does not appear again unless there is a change in the EULA's terms. See Sharp Dep. at 147: 11-148:25.  Mr. Sharp also admitted at his deposition that there is no evidence that the OxBlue Defendants were presented with, or were otherwise aware of, the EULA when they accessed FCR's EarthCam account.  Id.

at 148:23-149-16.[4]

EarthCam concedes that some of its customers "elect" to have their websites and information made public, but insists that the majority of its customers' websites are not in the public domain.[5]  In other words, EarthCam does not require its customers to shield their "user interface" experience from the public to maintain the secrecy of EarthCam's alleged "trade secrets."  EarthCam also has a live demonstration of its services on its website that provides a graphical representation of how the cameras appear on a customer account.

EarthCam claims that "administrative access" to a password protected account allows the user to interact with EarthCam's hardware, and view the actual code that operates the camera.  This claim, however, is not relevant here because Mr. Sharp, at his October 15, 2012 deposition, conceded that there is no evidence the OxBlue Defendants either viewed or copied EarthCam's code, or accessed and

---

[4] In his November 18, 2013, affidavit, Mr. Sharp claims that Mattern, McCormack and Potts viewed and accepted the EULA from OxBlue's Internet Protocol address.  Sharp Aff. at ¶ 18.  The Court disregards this new claim because it contradicts Mr. Sharp's testimony at his deposition, and the EULA is of limited relevance because it did not prevent EarthCam's customers from sharing their passwords with third parties.  McCormick, 333 F.3d 1234.

[5] This fact, and others, undermine EarthCam's claim that the content of a customer's webpage is a "trade secret" because it is the prerogative of EarthCam's customers to "elect" to either publicize the contents of their webpage or choose to keep the webpage private.

manipulated EarthCam's hardware from FCR's account in May, 2011. <u>See</u> Sharp Dep. at 56:12-20; 57:20-58-12.

iii.   <u>Information Received from Hermann</u>

EarthCam alleges that between May 2008 and August 2010, Hermann provided the OxBlue Defendants with information that EarthCam considered "trade secrets," including detailed information about EarthCam's cameras, customers, suppliers, and pricing information. This claim is based on EarthCam's claimed interpretation of the email correspondence between Hermann and the OxBlue Defendants from 2008-2010. Because the parties are unable, or unwilling, to agree on what was said or described in these emails, the Court has examined the email correspondence between Hermann and the OxBlue Defendants. The Court's conclusions regarding whether these emails contain EarthCam's trade secrets can be found in Section II(B)(2)(ii) of this Order.

3.   <i>Hermann's Motion for Summary Judgment</i>

i.   <u>Non-Compete Agreement and Release</u>

On July 10, 2006, Hermann and EarthCam executed a Noncompetition, Nondisclosure, and Inventions Agreement ("Employment Agreement").

8

The provision in the Employment Agreement that governs confidentiality provides:

> Except as required by law, Employee will not, whether during or after the termination or cessation of his employment, reveal to any person, association, or company any of the trade secrets or confidential information concerning the organization, business, or finances of the Company so far as they have come or may come to the knowledge of the Employee, except as may be in the public domain through no fault of Employee or as required to be disclosed by law or court order, and Employee shall keep secret all matters entrusted to him and shall not use or attempt to use any such information in any manner which may injure or cause loss or may be calculated to injure or cause loss, whether directly, or indirectly, to the Company.

See Pl.'s Ex. A, attached to Ex. 50.

In June 2008, Hermann ended his employment with EarthCam. On June 20, 2008, Hermann requested EarthCam to pay certain employment related expenses, in the amount of $1,038.00, that he had incurred when working for EarthCam. Hermann threatened to file claims against EarthCam for these unpaid expenses if they were not paid. EarthCam requested Hermann to sign a release in consideration of settling his claim for unpaid expenses. Hermann rejected EarthCam's request for a unilateral release, and demanded that EarthCam execute a mutual release. On July 24, 2008, EarthCam's Vice President, Joe Nizza ("Nizza"), asked Hermann to draft the language Hermann wanted to include in the mutual release. Hermann refused to draft the mutual release language, and demanded payment for his expenses. Hermann did not sign the purported mutual

9

release that Nizza proposed.

On August 13, 2008, Nizza sent Hermann a check for $706.14 enclosed with a letter entitled "mutual release."  Nizza wrote that the check constituted "final reimbursement of [Hermann's] expenses," and the letter further stated that it

> serve[d] as a mutual release for all claims, liabilities, liens, demands, and causes of action, known and unknown, fixed or contingent, which either you, Richard Hermann, or EarthCam may have or claim to have against each other and both parties hereby agree not to file a lawsuit to assert such claims.

There is no dispute that Hermann accepted and cashed the check for $706.14 that was sent to him in exchange for the mutual release.

ii.    "OxBlue 3019"

"OxBlue 3019" refers to a file that contains more than 4 gigabytes of data that was discovered in this litigation on OxBlue's computers.  EarthCam contends that this information was transmitted from Hermann's computer, but there is no evidence that Hermann transferred this information to the OxBlue Defendants. EarthCam suggests that Hermann transferred the data contained on OxBlue 3019 on June 19, 2009.  This suggested transfer date is based on a June 19, 2009, email, that Hermann sent to McCormack, in which Hermann asked for an FTP[6] site to

---

[6] File Transfer Protocol is a network protocol used to transfer data from one computer to another.

upload a large amount of data.  This email does not state or indicate that Hermann intended to upload data from OxBlue 3019.  There is no evidence that this FTP request resulted in the transfer of any data.  EarthCam alleges that OxBlue 3019 includes

- detailed, step by step photos of the EarthCam Robotic Megapixel System being built;

- Images of the internals of the Robotic Megapixel System;

- In-house assembly manual pages and photos;

- An entire system schematic including power and control diagrams for EarthCam proprietary cables;

- An installation manual for the EarthCam Robotic System; and

- Drawings and part lists for all proprietary mounts for the EarthCam Robotic Megapixel System.

To support this claim, EarthCam cites to information it drafted and which it included in its October 18, 2012, Supplemental Response to OxBlue's Interrogatory Nos. 2, 5, and 8.  This citation appears in EarthCam's Statement of Material Facts in Opposition to the Motions for Summary Judgment filed by Hermann and the OxBlue Defendants.  See EarthCam's Statement of Material Facts in Opp. to Hermann's Mot. for Summ. J. at ¶ 50; EarthCam's Statement of

Material Facts in Opp. to the OxBlue Defendants' Mot. for Summ. J. at ¶ 41.

EarthCam's responses to the OxBlue Defendants' interrogatories are not evidence.[7]

EarthCam has not presented any evidence to support its claim that OxBlue 3019

contained confidential or proprietary information that can be considered a trade

secret under Georgia law.  In Opposition to Hermann's Motion for Summary

Judgment, EarthCam submitted a few photographs depicting the internal structure

of an unidentified machine, a user manual to one of its cameras, and charts that

---

[7] "Although an answer to an interrogatory is admissible against the party answering the interrogatory, it ordinarily is not admissible in evidence against anyone else, including a codefendant.  A party who has answered interrogatories submitted by an adversary generally cannot secure admission of its answers into evidence and may not rely on its answers as evidence in its favor or as affirmative evidence."  See 23 Am. Jur. 2d, Depositions and Discovery, § 131 (collecting cases); Kirk v. Raymark Indus., Inc., 61 F.3d 147, 167-68 (3d Cir. 1995) (holding that a response to an interrogatory cannot be admitted on the basis that the interrogatory was signed and sworn under penalty of perjury because the response "lacks the 'circumstantial guarantee of trustworthiness contemplated by Rule 803(24) of the Federal Rules of Evidence."); Gilmore v. Macy's Retail Holdings, Civil No. 06-3020 (JBS), 2009 WL 140518, at *9-10 (D. N.J. Jan. 20, 2009) ("a litigant may not introduce statements from its own answers to interrogatories or requests for admission as evidence because such answers typically constitute hearsay when used in this manner.") (collecting cases).  See also Gross v. Burggraf v. Constr. Co., 53 F.3d 1531, 1541-42 (10th Cir. 1995); Johnson v. Gestamp Alabama, LLC, 946 F. Supp. 2d 1180, 1196 (N.D. Ala. 2013) (noting that several Circuits have held that a party cannot use its own self-serving answers to an interrogatory on summary judgment).  But see Johnson v. Holder, 700 F.3d 979, 982 (7th Cir. 2012) (holding that a non-hearsay response to an interrogatory that is based on personal knowledge may be considered as evidence on summary judgment).  Even if EarthCam's self-serving response about the contents of OxBlue 3019 was admissible, EarthCam has not provided any basis for its admissibility.

appear to depict how a camera is connected with wires.  Based on Mr. Sharp's

conclusory affidavit, EarthCam argues that these images contain "trade secrets,"

and were not "publicly available and gave EarthCam a competitive advantage."

Mr. Sharp does not explain why any of the information depicted in these images,

or contained on OxBlue 3019, was not publicly available or otherwise gave

EarthCam a "competitive advantage."[8]

### 4.    EarthCam's Motion for Summary Judgment

### i.    Construction Specifications

OxBlue created a construction specification for its "Web-Enabled

Construction System" ("OxBlue Specification") to assist individuals and

organizations in the construction industry to prepare for use of OxBlue's

equipment on construction projects.  Construction specifications are documents

that provide directions on the methods and materials to be used on a construction

---

[8] The Court observes that EarthCam's contention, including the assertions made in
Mr. Sharp's November 18, 2013, affidavit, that the OxBlue Defendants received
proprietary information that was "not publicly available and gave EarthCam a
competitive advantage," is generally unsupported by any facts or evidence that can
be considered on the parties' Motions for Summary Judgment.  An affidavit that
contains "conclusory allegations without specific supporting facts [has] no
probative value."  Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir.
2000).  In his affidavit, Mr. Sharp does not explain why the information allegedly
disclosed to the OxBlue Defendants was "not publicly available and gave
EarthCam a competitive advantage."  This is a fundamental shortcoming in
EarthCam's case and its response to OxBlue's Motion for Summary Judgment.

project. The OxBlue Specification is modeled on the Construction Specification Institute's ("CSI") MasterFormat, 2004 Edition. The CSI MasterFormat is a standardized system of indexing and organizing construction specifications to assist architects, engineers, contractors and manufacturers. The OxBlue Defendants concede that the CSI MasterFormat provides "people a guideline, so when they want to go in and find something they know where to look in a specification to find it." McCormack Dep. at 97: 6-8.

The OxBlue Specification was first published on October 17, 2006. On March 13, 2012, OxBlue filed an application with the United States Copyright Office to register the OxBlue Specification. OxBlue claims that EarthCam infringed on its copyright by copying the numerical code sequence (or title) for the OxBlue Specification—01 32 34.01—and by copying portions of the OxBlue Specification, including

OxBlue's Specification states:

The indoor/outdoor camera system shall consist of a tamper and impact resistant, discreet, fixed [wall] [and][or] [pole] mount enclosure with integrated fixed camera, lens and controller.

Exhibit A to OxBlue's Counterclaim [Dkt. No. 46].

EarthCam's Specification states:

The indoor/outdoor camera system shall consist of a tamper and impact resistant enclosure with integrated camera and heavy-duty

14

robotic pedestal to be mounted as a fixed pole, wall, parapet or non-penetrating roof mount.

Exhibit B, C, & D to OxBlue's Counterclaim [Dkt. No. 46].

OxBlue's Specification states:

Camera: Integrated high definition camera and lens assembly consisting of a charge coupled device (CCD) camera with a remotely controlled focal length lens mounted as a permanent module with the following features:

Exhibit A to OxBlue's Counterclaim [Dkt. No. 46].

EarthCam's specification states:

Camera: Integrated 8 Megapixel high definition camera and lens assembly consisting of a charge coupled device (CCD) camera with a remotely controlled focal length lens with the following features:

Exhibit B, C, & D to OxBlue's Counterclaim [Dkt. No. 46].

ii.   Keyword Searches

In the beginning of 2010, Work Zone Cam ("WZC"), a subsidiary of EarthCam, purchased a number of terms from several search engines as keywords for search engine advertising.  The words purchased included "earthcam," "earth cam," "webcam" and "oxblue."  Users that searched for the term "oxblue" would see a link to the Work Zone Cam's website in the "Sponsored Links" section that appears next to the search results on a search engine's webpage.  Work Zone Cam did not use the term "OxBlue" on its website, or in the metadata for its website,

except if there was a news article that mentioned Work Zone Cam and OxBlue.  In May 2010, at McCormack's request, EarthCam discontinued the use of the term "oxblue" as a keyword for the Work Zone Cam's website.  In 2003, OxBlue purchased the term "earthcam" as a keyword on Google in connection with an advertising campaign for OxBlue's products.

OxBlue argues that, by purchasing the term oxblue on several search engines, EarthCam infringed on OxBlue's trademark, and falsely designated OxBlue's products and goodwill as its own.

iii.   <u>False Advertising</u>

In March 2009, OxBlue hired Mack McAleer and Ronald Grunwald to call EarthCam pretending to be customers looking for a camera solution.  McAleer and Grunwald secretly recorded their conversations with Todd Michaels, an EarthCam sales representative.  In a conversation about EarthCam's solar powered camera offerings, Michaels told Grunwald that OxBlue's cameras do not offer heaters to defrost the front glass of the camera housing.  OxBlue's solar cameras do not use heaters.  Michaels also told OxBlue's representatives that EarthCam's competitors use experimental server technology, expose their customers to copyright infringement lawsuits, and that EarthCam has more employees in its customer service department than its competitors have in their entire company.  There is no

16

dispute that Michaels, in making his statements about competitors, did not specifically mention OxBlue.  OxBlue submits that the statements made by Michaels were false misrepresentations that constitute false advertising under the Lanham Act.

OxBlue also brings a false advertising claim based on a chart prepared by EarthCam that compares EarthCam's webcams with OxBlue's cameras, highlighting the alleged advantages of EarthCam's webcams.  The chart was created to assist EarthCam's sales representatives in the marketing and sale of EarthCam's cameras.  The chart represents that OxBlue's cameras do not offer, on all camera systems, detailed archived weather data, in-house 24/7 monitoring of cameras and in-house technical support, and professionally designed and integrated surge protection.  OxBlue asserts that EarthCam's chart, which was sent to one customer, contains false statements regarding OxBlue's cameras.  OxBlue has not presented any evidence to establish that the chart was widely disseminated or whether the statements contained in the chart were frequently represented to EarthCam's customers in connection with a sales call or an advertising campaign.

B.    Procedural History

The procedural history of this case is lengthy.  EarthCam filed a Complaint against the Defendants on July 12, 2011, and an Amended Complaint on August

25, 2011.  On March 26, 2012, the Court dismissed most of the claims alleged in EarthCam's Amended Complaint.

On November 26, 2012, EarthCam filed a Second Amended Complaint against Hermann and the OxBlue Defendants, in which it alleged that the Defendants (i) obtained EarthCam's trade secrets and then used those trade secrets in the development of OxBlue's products, (ii) conspired to obtain and use EarthCam's trade secrets; (iii) infringed on EarthCam's copyright by copying portions of FCR's user account; (iv) violated the Computer Fraud and Abuse Act ("CFAA") by accessing FCR's user account; and (v) conspired to violate the CFAA.  The Second Amended Complaint also alleged that Hermann breached the terms of his employment contract with EarthCam, and that the OxBlue Defendants tortiously interfered with Hermann's contract by inducing Hermann to disclose EarthCam's confidential information.

On April 5, 2012, OxBlue filed its counterclaims against EarthCam, and alleged that EarthCam (i) infringed on its copyright by copying the OxBlue Specification; (ii) violated the Lanham Act prohibitions on trademark infringement, false designation of origin and false advertising, (iii) violated the Georgia Deceptive Trade Practices Act, (iv) and engaged in unfair competition under the Lanham Act and O.C.G.A. § 23-2-55.

On July 19, 2013, the Court granted the OxBlue Defendants' Partial Motion to Dismiss the Second Amended Complaint in part, and denied Hermann's Partial Motion to Dismiss.  The Court granted the OxBlue Defendants' Motion to Dismiss based on alleged copyright infringement and violations of the CFAA that occurred before July 12, 2008.  The Court denied the OxBlue Defendants' Motion to Dismiss with respect to all other claims.

On September 27, 2013, Hermann and the OxBlue Defendants moved for summary judgment on EarthCam's claims, and EarthCam moved for summary judgment on the OxBlue Defendants' counterclaims.  In response to Hermann's Motion for Summary Judgment, EarthCam stated that it is no longer pursuing its claims against Hermann for copyright infringement and conspiracy to violate the CFAA.

## II.    DISCUSSION

### A.    Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings." Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record." Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "[w]here

20

the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

     B.    <u>Analysis</u>

         1.    *EarthCam's Claims against the OxBlue Defendants*

             i.    <u>Trade Secrets</u>

"A claim for misappropriation of trade secrets under the Georgia Trade Secrets Act requires a plaintiff to prove that '(1) it had a trade secret and (2) the opposing party misappropriated the trade secret.'" <u>Capital Asset Research Corp. v. Finnegan</u>, 160 F.3d 683, 685 (11th Cir. 1998) (quoting <u>Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.</u>, 139 F.3d 1396, 1410 (11th Cir. 1998)). A "trade secret" is defined as:

> [I]nformation, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information:
>
>   (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
>   (B) Is the subject of efforts that are reasonable under the

21

circumstances to maintain its secrecy.

O.C.G.A. § 10-1-761(4).

That is, a trade secret requires the following elements: (i) information not commonly known by or available to the public, (ii) which derives economic value from not being generally known to or ascertainable by proper means by others who can obtain economic value from the information; and (ii) that was subject to reasonable efforts to maintain its secrecy.  See Capital Asset Research Corp., 160 F.3d at 685.  "Whether a particular type of information constitutes a trade secret is a question of fact."  Camp Creek, 139 F.3d at 1410–11.  The plaintiff has "the burden of establishing each of these statutory elements as to each claimed trade secret."  Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1158 (11th Cir. 2004).  This means that "a plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist."  Rent Info. Tech., Inc. v. Home Depot U.S.A., Inc., 268 F. App'x 555, 557 (9th Cir. 2008) (applying Georgia law).

A plaintiff also must allege and show that the claimed information "[d]erives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and "[i]s the subject of efforts that are

22

reasonable under the circumstances to maintain its secrecy."

O.C.G.A. § 10-1-761(4). The claim fails if any of the elements are not shown. See Capital Asset Research, 160 F.3d at 686 (holding that "it was impossible for the Court to say" that the information met the definition of a "trade secret" because the plaintiff failed to present evidence that the information derived economic value from an element of secrecy that is known only to plaintiff and its employees).

A defendant "misappropriates" a trade secret when, among other things, it discloses or uses "a trade secret of another without express or implied consent" knowing at the time of the disclosure or use that the trade secret was "[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." O.C.G.A. § 10-1-761(2)(B); see Kuehn v. Selton & Assocs., 530 S.E.2d 787, 791 (Ga. Ct. App. 2000). A non-disclosure agreement can be the basis for imposing a duty not to disclose a trade secret. See Penalty Kick Mgmt. Ltd. v. Coca Cola Co., 318 F.3d 1284, 1292 (11th Cir. 2003).

> As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a "use" . . . . Thus, marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, [and] relying on the trade secret to assist or accelerate research or development . . . all constitute "use."

> The unauthorized use need not extend to every aspect or feature of the trade secret; use of any *substantial portion* of the secret is sufficient to subject the actor to liability. . . . [A]n actor is liable for

23

using the trade secret with independently created improvements or
modifications if the result is *substantially derived* from the trade
secret. . . .  However, if the contribution made by the trade secret is so
slight that the actor's product or process can be said to derive from
other sources of information or from independent creation, the trade
secret has not been "used" for purposes of imposing liability under the
rules.

Id. at 1292–93 (first, second, and fourth omissions and first alteration in original)

(quoting Restatement (Third) of Unfair Competition § 40 cmt. c (1995)).

It is well-established that, for a plaintiff to prove that a defendant

"misappropriated the trade secret," the plaintiff must "show that the defendant

(1) disclosed information that enabled a third party to learn the trade secret or

(2) used a 'substantial portion' of the plaintiff's trade secret to create an

improvement or modification that is 'substantially derived' from the plaintiff's

trade secret."  Id. at 1293.

On July 12, 2011, EarthCam filed its Complaint against the OxBlue

Defendants.  EarthCam amended its Complaint twice.  The crux of EarthCam's

misappropriation of trade secrets claim has consistently been that the OxBlue

Defendants "obtained EarthCam's trade secrets and then used those trade secrets in

development of OxBlue's own products and services."  Second Am. Compl. at ¶

66.  EarthCam has not presented evidence that the OxBlue Defendants

misappropriated EarthCam's trade secrets by obtaining the trade secrets through

improper means, and using a substantial portion of the trade secrets to create a product that is substantially derived from EarthCam's trade secrets.  See Penalty Kick Mgmt. Ltd., 318 F.3d 1293.  EarthCam relies on three exhibits to argue that there is "substantial evidence OxBlue used EarthCam's trade secrets."  EarthCam's Resp. in Opp. to the OxBlue Defs.' Motion for Summ. J. at 13.  No reasonable juror would agree with EarthCam's argued interpretation of these exhibits:

- Relying on a July 14, 2008, email exchange between Hermann, Mattern, McCormack and other unidentified individuals, EarthCam argues that "Mattern incorporated EarthCam technology provided by Hermann into an OxBlue camera in 2008."  In this email exchange, Hermann writes to the others and states that OxBlue's graphical user interface looks "fantastic," the "pre-set archiving method looks awesome," and tells Mattern "to have fun" with the "24/1s."  The email exchange does not discuss or allude to any EarthCam technology.  EarthCam does not explain why "pre-set archiving" techniques are not commonly known in the industry or known only to EarthCam and its employees.  No reasonable juror would infer that this email exchange provides circumstantial evidence of misappropriation.  See Ex. 45, attached to EarthCam's Response to the OxBlue Defendants' Motion for Summary Judgment.

- EarthCam claims that OxBlue upgraded its cameras to include "low voltage disconnect or deep-cycle batteries" after Hermann provided OxBlue with information about these features, and disclosed the identity of EarthCam's supplier to OxBlue.  To support this claim, EarthCam relies on an email exchange between McCormack and Hermann that does not mention "low voltage disconnect or deep-cycle batteries."  There is no reference to EarthCam or any of its products in this email.  EarthCam does not explain why the incorporation of "low voltage disconnect or deep-cycle batteries" into its products is known only to EarthCam and its employees.  To the extent that EarthCam implies that Sunwize was EarthCam's exclusive supplier, the email indicates that McCormack had independent knowledge of Sunwize.  McCormack asked Hermann "have you ever been in Sunwize's office in Rochester? I'm thinking about going in late January to meet with them."  Hermann replies and states "Sunwize . . ., I used their equipment quite often but never visited their HQ."  In context, the email demonstrates that Hermann *did not* disclose EarthCam's allegedly "exclusive" relationship with Sunwize, and McCormack sought to establish a relationship with Sunwize on his own.  EarthCam also does not explain why its relationship with Sunwize is a trade secret.  See Ex. 46, attached to

26

EarthCam's Response to the OxBlue Defendants' Motion for Summary Judgment.

- EarthCam relies on a declaration submitted by its founder, Brian Curry, to argue that OxBlue used EarthCam's confidential information regarding pre-set archiving.  See Ex. 47, attached to EarthCam's Response to the OxBlue Defendants' Motion for Summary Judgment.  Mr. Curry declares that, based on his evaluation of Hermann's emails produced in discovery, footage from one of OxBlue's cameras showed that OxBlue's cameras had "the same glitch that early EC preset cameras had while archiving."  Curry Aff. at ¶ 7.  That is, Mr. Curry assumes that OxBlue used EarthCam's trade secrets because of a technical "glitch" common to both products.  Mr. Curry's speculative gut feeling is not evidence.  OxBlue has presented evidence that the technical "glitch" is caused by a limitation on certain hardware produced by a third party provider.  EarthCam has not produced any evidence to rebut OxBlue's explanation, and it is not reasonable to infer that the "glitch" originated in information purportedly acquired from EarthCam.

   *a.      Failure to show EarthCam's trade secrets at issue.*

The Court's independent evaluation of EarthCam's exhibits demonstrates

that there is no evidence OxBlue used and incorporated EarthCam's trade secrets

into its products.  The Court's description of EarthCam's "evidence" shows that

EarthCam's "ends justify the means" pleading and litigation tactics did not produce

evidence to support the claims it asserted.  EarthCam has fundamentally failed to

meet its statutory burden under the Georgia Trade Secrets Act to plead and prove

"each . . . statutory element[] as to each claimed trade secret."  <u>Peat, Inc.</u>, 378 F.3d

at 1158.  With respect to the documents outlined above, EarthCam also does not

explain why the information contained in them "[d]erive[s] economic value, actual

or potential, from not being generally known to, and not being readily

ascertainable by proper means by, other persons who can obtain economic value

from [the information's] disclosure or use" *and* "[are] the subject of efforts that are

reasonable under the circumstances to maintain [their] secrecy."  O.C.G.A. § 10-1-

761(4).

   For example, EarthCam does not explain why it "derives economic value"

from the use of pre-set archiving and deep-cycle batteries, or its relationship with

Sunwize, from not "being generally known to or readily ascertainable" by the

public.  There is no argument, or evidence, presented to the Court that allows the

Court to properly evaluate whether the litany of information presented by EarthCam is even a "trade secret." This observation applies to all the "evidence" on which EarthCam relies for its trade secret claim against the OxBlue Defendants and Hermann.

The information that the OxBlue Defendants accessed through FCR's EarthCam account is not a trade secret because EarthCam allows its customers to either publicize the contents of their webpage or choose to keep the webpage private. Put another way, EarthCam fundamentally fails to meet what is required to assert a trade secrets claim. EarthCam's trade secrets claim based on access to FCR's account fails on the most basic element. The information claimed to be a trade secret was "commonly known by or available to the public." Wachovia Serv., Inc. v. Fallon, 682 S.E.2d 657, 662 (Ga. App. Ct. 2009). EarthCam also has a live demonstration on its website that provides a graphical representation of how the cameras appear on a customer account. EarthCam's argument that "administrative access" to some of its customer accounts allows the user to interact with hardware and view the actual code that operates a camera is inconsequential. EarthCam's Vice President of Technology admits that there is no evidence the OxBlue Defendants either viewed or copied EarthCam's code, or accessed and

manipulated the hardware from FCR's account in May, 2011.[9]

With respect to the so-called "brute-force"[10] attack, EarthCam contends that, in 2006, OxBlue utilized a script to gather confidential information from EarthCam's customers' webpages, including customer names, camera names, images from customer cameras, the URL to the image for each camera, and the date and time stamped on the last image taken from a camera.  The OxBlue Defendants dispute that the script accomplished what EarthCam argues.

Even if the Court assumes that the script accessed all of the information alleged—even though there is no evidence it did—EarthCam has the burden to show that the customer information gathered in 2006 "(1) derive[s] economic value from being a secret not readily ascertainable by proper means, and (2) [] [is] the subject of reasonable efforts to maintain its secrecy."  Vito v. Inman, 649 S.E.2d

---

[9] The same analysis applies to the claim regarding Paulson's distribution of Benning's password to McCormack in 2008.  There also is no evidence to support EarthCam's claim that the OxBlue Defendants actually accessed Benning's account.

[10] The Fifth Circuit has defined a "brute-force" attack as a "term of art in computer science used to describe a program designed to decode encrypted data by generating a large number of passwords."  United States of America v. Phillips, 477 F.3d 215, 218 n.2 (5th Cir. 2007).  The Fifth Circuit's definition is consistent with the contemporary definition of the term.  http://en.wikipedia.org/wiki/Brute-force_attack.  Here, there is no evidence that data was decrypted or passwords were generated when Mattern ran a script to collect data on EarthCam's customers' webpages.

753, 757 (Ga. App. Ct. 2007) (holding that plaintiff failed to prove both prongs because he admitted that his competitors "would not seek to use the [customer] list to take his patients from him."). EarthCam is "required to prove both prongs to be entitled to protection under the [Georgia Trade Secrets]." Id.  This showing was not made.  Some of the claimed "trade secrets," including camera names and images taken from cameras, are patently frivolous, and doubtfully "derive economic value from being a *secret* not readily ascertainable by proper means." Id. (emphasis added).[11]  EarthCam has not presented any evidence to support that the information gathered in 2006 even potentially derived economic value from not being generally known or readily ascertainable by proper means.

EarthCam has not presented any evidence to support its claim that OxBlue

---

[11] EarthCam's claim that camera names are a trade secret is analogous to Apple claiming that iPhone is a trade secret or Sony claiming that PlayStation 4 is a trade secret regardless of the fact that these products are publicly marketed and the public is aware of the products' names.  To the extent that EarthCam claims its use of a camera manufactured by a third party, such as Toshiba, is a "trade secret," that claim is analogous to Apple asserting that the incorporation of Near Field Communication technology ("NFC") into its products is a trade secret.  NFC allows smart phones to communicate wirelessly with point-of-sale terminals.  It enables a smart phone user to pay for goods with his or her phone.  As for images allegedly taken from a customer's camera, those images are presumably the customer's property, and depict information owned by the customer.  They are not EarthCam's property, and it is hard to see how EarthCam would "derive economic value" from keeping the images secret or that a customer is even obligated to do so.

3019 contains confidential or proprietary information that constitutes a trade secret under Georgia law.  For the purpose of deciding the OxBlue Defendants' Motion for Summary Judgment, even if the Court assumes that the information contained in EarthCam's Supplemental Response to OxBlue's Interrogatories is admissible evidence, EarthCam has not shown that the information is a protectable "trade secret."

EarthCam does not explain why "installation and assembly manuals," "power and control diagrams," and "drawings and part lists" for the installation of a megapixel camera that incorporates third party technology "derive economic value" from an element of secrecy that is known only to EarthCam and its employees.  EarthCam simply relies on Mr. Sharp's affidavit to conclude that the information contained in OxBlue 3019 "was not publicly available and gave EarthCam a competitive advantage."  In his affidavit, Mr. Sharp does not specify why the information on OxBlue 3019 was "not publicly available and gave EarthCam a competitive advantage."  Mr. Sharp's belief and conclusory allegations are insufficient to survive summary judgment.  See Ojeda v. Louisville Ladder, Inc., 410 F. App'x 213, 214 (11th Cir. 2010) (holding that conclusory allegations in an affidavit have no probative value, and a nonmoving party cannot rely on the conclusory allegations to avoid summary judgment).

EarthCam also does not explain why its submission of photographs that depict the internal structure of an unidentified machine, a user manual for one of EarthCam's cameras, and charts that appear to depict how a camera is connected with wires "derive[] economic value from being a secret not readily ascertainable by proper means, and (2) [] [are] the subject of reasonable efforts to maintain [their] secrecy."[12]  <u>Vito</u>, 649 S.E.2d at 757.[13]

_____

[12] The Court doubts that a user manual and a chart depicting how a camera is connected with wires constitute trade secrets.  A user manual for EarthCam's cameras, and instructions on how to install a camera are presumably provided to, or known to, every customer that purchases EarthCam's products.  EarthCam did not provide evidence that they are not or that steps were taken to protect their secrecy—likely because they are not secret.  There certainly is no evidence of efforts to maintain them as secret.  That is, the user manual and installation documents are public, and the Court doubts that EarthCam's customers are prohibited from sharing these documents, or the information contained in these documents, because they are EarthCam's "trade secrets."  The pictures submitted by EarthCam depict, among other things, a QuickSet tripod and the internal structure of a camera that contains equipment produced by GarrettCom.  EarthCam has not presented evidence that the incorporation of these products, produced by third parties, into its own products is not commonly known in the industry.  EarthCam's customers are probably able to remove the cover of a camera assembled by EarthCam, and view its internal contents.  EarthCam certainly has not presented evidence that it made any effort to prohibit removal of the cover or even warned that removal was prohibited because removal would disclose protected trade secrets.  EarthCam thus has not presented evidence that reasonable steps were taken to maintain the secrecy of the internal components of its Robotic Megapixel Camera.  The wiring diagram submitted by EarthCam shows how to connect an Olympus Megapixel Camera to the Axis Webcaster with Quickset cables.  These products are produced by third parties, and EarthCam has failed to show that this basic task is not commonly known in the industry.  EarthCam's claim regarding the alleged secrecy of an installation and maintenance guide for

### b.   EarthCam has not presented evidence of use of purported trade secrets.

EarthCam has failed to meet its statutory burden to prove that OxBlue used its trade secrets, even assuming there were any at issue in this case, and summary judgment is thus granted in favor of the OxBlue Defendants.  There is no evidence trade secrets are at issue here and there is no evidence, direct or circumstantial, that EarthCam's alleged trade secrets were used by the OxBlue Defendants. Recognizing that its "use of trade secrets" claim is factually unsupported, EarthCam argues, for the first time in its Response to the OxBlue Defendants' Motion for Summary Judgment, that misappropriation may occur through "acquisition of a trade secret of another by a person who knows or had reason to know that the trade secret was acquired by improper means."  See O.C.G.A. § 10-1-761-(2)(A).  The Federal Rules of Civil Procedure do not allow EarthCam to raise new claims or new theories of the case at the summary judgment stage.  "A plaintiff may not amend [its] complaint through argument in a brief opposing

---

the "All Weather Megapixel" camera is nonsensical.  The guide is targeted towards laypeople, including customers, that contains basic instructions such as "read, follow, and keep these instructions, heed all warnings, do not install near any heat sources . . .  [and] installation should only be done by qualified personnel . . . "

[13] EarthCam also has failed to meet its statutory burden to prove that the information received from Hermann is a trade secret under Georgia law.  See Section II(B)(2)(ii) of this Order.

summary judgment." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314-15 (11th Cir. 2004).  EarthCam's newly raised claim is not properly before the Court, and the Court is not required to consider it.  Id.  Even if the Court considered EarthCam's new theory of the case, the OxBlue Defendants are entitled to summary judgment because there is no evidence that they improperly acquired EarthCam's "trade secrets."  EarthCam fundamentally failed to prove its trade secrets claim.

Because the OxBlue Defendants are entitled to summary judgment on EarthCam's claim for misappropriation of trade secrets, summary judgment is also granted on EarthCam's claim that the Defendants conspired to violate the Georgia Trade Secrets Act.  "A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means.  To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort.  Absent the underlying tort, there can be no liability for civil conspiracy." J. Kinson Cook of Georgia, Inc. v. Heery/Mitchell, 644 S.E.2d 440, 448 (Ga. Ct. App. 2007) (quoting Mustaqeem–Graydon v. SunTrust Bank, 573 S.E.2d 455, 461 (Ga. Ct. App. 2002)).  EarthCam's conspiracy claim is required to be dismissed because there is no evidence that the OxBlue Defendants misappropriated EarthCam's trade

secrets.

ii.   <u>CFAA</u>

The CFAA, 18 U.S.C. § 1030, prohibits accessing a computer and obtaining information without authorization or by exceeding authorized access.  EarthCam asserts violations of Sections 1030(a)(2)(C) and 1030(a)(4) of the Act.

Section 1030(a)(2)(C) provides:

> [Whoever] intentionally *accesses* a computer *without authorization* or *exceeds authorized access* and thereby obtains . . . information from any protected computer if the conduct involved an interstate or foreign communication . . . shall be punished.

18 U.S.C. § 1030(a)(2)(C) (emphasis added).

Section 1030(a)(4) provides:

> [Whoever] knowingly and with intent to defraud, *accesses* a protected computer *without authorization,* or *exceeds authorized access,* and by means of such conduct furthers the intended fraud and obtains anything of value . . . shall be punished.

18 U.S.C. § 1030(a)(4) (emphasis added).

Although principally a criminal statute, the CFAA provides that "any person who suffers damage or loss [as a result of a violation] . . . may maintain a civil action . . . for compensatory damages and injunctive relief or other equitable relief."  18 U.S.C. § 1030(g).  The CFAA does not define "without authorization." The CFAA defines "exceeds authorized access" to mean "to access a computer

with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).  District courts in this circuit have held that a violation under the CFAA for access "without authorization" "occurs only where initial access is not permitted."  See Diamond Power Int'l., Inc. v. Davidson, 540 F.Supp.2d 1322, 1341 (N.D. Ga. 2007); see also Lockheed Martin Corp. v. Speed, No. 6:05–cv–1580–ORL–31, 2006 WL 2683058 (M.D. Fla. Aug.1, 2006).

EarthCam argues that the OxBlue Defendants violated the CFAA by using Chip Foley's password and username to access FCR's EarthCam account.  The Eleventh Circuit and the district courts within this Circuit have not yet addressed whether a defendant can be liable under the CFAA for using a third party's login credentials to access a customer account that a plaintiff would not otherwise authorize the defendant to use or access.  There are, however, federal cases outside this Circuit that are instructive on this issue.

In Secureinfo Corp. v. Telos Corp., an individual authorized to use the plaintiff's software provided the defendants with access to software in violation of the license agreement.  387 F. Supp. 2d 593, 608 (E.D. Va. 2005).  The court found that the defendants had "permission and authorization [from the licensee] to use the [] server and view what was contained therein," and that even if the defendants

were provided with access in violation of the licensing agreement, they were entitled to obtain information on the server because the licensee authorized the defendants to access the software.  Id. at 609.

In State Analysis Inc. v. American Fin. Serv. Assoc., the district court declined to dismiss a claim brought under the CFAA where the plaintiff alleged that the defendant used another organization's login credentials to access plaintiff's proprietary material.  621 F. Supp. 2d 309, 316 (E.D. Va. 2009).  The court determined that the defendant, "a former client of [the plaintiff] that employed [plaintiff's] former marketing director, was *presumably familiar* with the terms of [plaintiff's] agreement and with the scope of authority granted to licensees."  Id. (emphasis added).  For this reason, the Court declined to dismiss the CFAA claim.

EarthCam relies on State Analysis to argue that it has a viable claim under the CFAA.  EarthCam's reliance is misplaced.  First, this case is different from State Analysis because EarthCam's EULA from 2011 did not prohibit its customers from sharing their passwords with third parties.  Second, Mr. Sharp admitted at his deposition that there is no evidence the OxBlue Defendants were familiar with the EULA, or that the OxBlue Defendants viewed the EULA when they accessed FCR's EarthCam account.  Unlike State Analysis, there is no evidence here that the OxBlue Defendants were "*presumably familiar* with the

38

terms of the [EULA] and with the scope of authority granted to licensees," and the EULA did not prohibit FCR from sharing its password in the first place.  Id. (emphasis added).

The Court's interpretation of State Analysis is consistent with how other federal courts have interpreted the decision.  In Atpac, Inc. v. Aptitude Solutions, Inc., the district court found that State Analysis applies where the defendant uses subterfuge to gain access to a plaintiff's website, computers, and servers, or otherwise engages in fraudulent conduct.  2:10294 WBS KJM, 2010 WL 1779901, at *6 (E.D. Ca. April 29, 2010).  Here, there is no evidence that the OxBlue Defendants engaged in subterfuge or orchestrated a fraud on EarthCam.  The OxBlue Defendants received an unsolicited request from an EarthCam client that was unsatisfied with EarthCam's services to provide a business solution, and the OxBlue Defendants accessed FCR's account with FCR's permission.  EarthCam does not argue that FCR was prohibited from sharing its password with the OxBlue Defendants.  The facts here are, in all relevant ways, similar to the facts in Secureinfo because FCR authorized the OxBlue Defendants to access its EarthCam account.

The EULA did not prohibit EarthCam's customers from sharing their passwords with third parties, and the OxBlue Defendants were not "presumably

39

familiar" with the EULA's terms.  The OxBlue Defendants simply are not civilly liable under the CFAA.  See <u>Atpac</u>, 2010 WL 1779901, at *6; <u>Secureinfo</u>, 387 F. Supp. 2d at 608.  The OxBlue Defendants' Motion for Summary Judgment on EarthCam's CFAA claim is granted.[14]

Because the OxBlue Defendants are entitled to summary judgment on EarthCam's CFAA claim, they also are entitled to summary judgment on EarthCam's claim that the Defendants conspired to violate the CFAA.  See <u>J. Kinson Cook of Georgia, Inc.</u>, 644 S.E.2d at 448 (quoting <u>Mustaqeem–Graydon</u>, 573 S.E.2d at 461).

iii.    <u>Copyright Infringement</u>

To establish a claim of copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  <u>Bateman v. Mnemonics, Inc.</u>, 79 F.3d 1532, 1541-42 (11th Cir. 1996); <u>see also</u> <u>BellSouth Advertising & Publishing Corp. v. Donnelley Info. Publishing, Inc.</u>, 999 F.2d 1436, 1440 (11th Cir.1993) (en banc).  There is no infringement if the portion of the copyrighted work actually taken is not entitled to copyright protection.  <u>Bateman</u>, 79 F.3d at 1541-42.  In other words, "in some

---

[14] The Court's ruling applies equally to EarthCam's CFAA claim against the OxBlue Defendants based on Paulson receiving an unsolicited username and password from Benning Construction.

cases, the amount of material copied will be so small as to be *de minimis*, and will not justify a finding of substantial similarity." MiTek Holdings, Inc. v. Arce Eng'g Co., Inc., 89 F.3d 1548, 1560 (11th Cir. 1996).  The *de minimis* doctrine provides that the law does not impose legal consequences when unauthorized copying is sufficiently trivial.  Ringgold v. Black Entm't, 126 F.3d 70, 74 (2d Cir. 1997).

With respect to computer programs and software, "substantial similarity" between the copyrighted work and the alleged infringed material refers to "the program as whole, not constituent elements of the program." MiTek, 89 F.3d 1560 at n.26.  In MiTek, the Eleventh Circuit affirmed the district court's finding of no infringement where four of the five protected elements of the computer program were substantially similar, but the elements lacked significance to the computer program as a whole.  Id.

EarthCam claims that the OxBlue Defendants infringed its copyright to the Control Center Software by capturing screenshots of FCR's customer account in May 2011.  The Control Center Software claims a copyright in "new and revised computer program, new and revised text, and compilation on screen displays." EarthCam's Statement of Material Facts at ¶ 61.

In Sony Computer Entertainment America, Inc. v. Bleem, LLC, a case that is helpful here, the Ninth Circuit analyzed the protectability of screenshots captured

41

from a video game.  214 F.3d 1022, 1028 (9th Cir. 2000).  The Ninth Circuit noted that the video game and the unauthorized use of the game's screenshots "are both commercial video game products; although the copyrighted work is creative in nature generally, a screenshot is not necessarily so.  A screenshot is merely an inanimate sliver of the game . . . inasmuch as these games involve plots that can be controlled interactively by the player and may elapse over several hours, it also seems true that a screenshot is of little substance to the overall copyrighted work." Id. (citing Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 565 (1985)).

In analyzing the amount and substantiality of the portion used in relation to the copyrighted work as a whole, the Ninth Circuit concluded that this "factor will almost always weigh against the video game manufacturer since a screenshot is such an insignificant portion of the complex copyrighted work as a whole."  Id. The Court is persuaded by the Ninth Circuit's reasoning in Sony.  A user controls the Control Center Software interactively, and the screenshots captured by the OxBlue Defendants are an "inanimate sliver" of the user interface that "is of little substance to the overall copyrighted work."  Id.  The burden to show the significance of the screenshots is on the copyright owner, and EarthCam here has failed to meet that burden.  MiTek, 89 F.3d at 1560.  EarthCam has failed to

42

demonstrate the significance of the screenshots to the Control Center Software as a whole, and a reasonable juror would not find evidence to support that the amount of material copied is sufficient for an actionable infringement claim. The OxBlue Defendants' Motion for Summary Judgment on EarthCam's copyright infringement claim is granted.

iv.    Tortious Interference with Contract

"Tortious interference claims, whether asserting interference with contractual relations, business relations, or potential business relations, share certain common essential elements: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." Kirkland v. Tamplin, 645 S.E.2d 653, 655-56 (Ga. Ct. App. 2007).

EarthCam argues that the OxBlue Defendants tortiously interfered with Hermann's employment contract by inducing Hermann to reveal EarthCam's trade secrets and confidential information. EarthCam has failed to identify any evidence of "improper action or wrongful conduct" that can be attributed to the OxBlue

43

Defendants.  "Improper action or wrongful conduct" "generally involves predatory

tactics such as violence, fraud, misrepresentation, defamation, use of confidential

information, abusive civil lawsuits, and unwarranted prosecutions." Kirkland, 645

S.E.2d at 656.  EarthCam has failed to present any evidence that the OxBlue

Defendants misappropriated EarthCam's trade secrets or acquired EarthCam's

claimed confidential information from Hermann.  Without evidence of improper

conduct, the facts alleged by EarthCam do not support a claim for tortious

interference with Hermann's employment contract.  See CS-Lakeview at Gwinnett,

Inc. v. Simon Prop. Grp., 642 S.E.2d 393, 398 (Ga. Ct. App. 2007); Project Control

Serv., Inc. v. Reynolds, 545 S.E.2d 593, 598 (Ga. Ct. App. 2001).

On July 19, 2013, the Court denied Hermann's Motion to Dismiss

EarthCam's breach of contract claim based on the claim that the Employment

Agreement was unenforceable under Georgia law.  Hermann's Employment

Agreement contains a choice-of-law provision that calls for the application of New

Jersey law to the interpretation and enforcement of the Employment Agreement.

In its July 19, 2013, Order, the Court concluded that Hermann's Employment

Agreement was unenforceable under Georgia law,[15] but found that the application

---

[15] Hermann's employment contract is unenforceable under Georgia law because it
includes a provision that prohibits Hermann from soliciting "any Customers"
without regard to the customer's location.  This provision is unenforceable in

of Georgia law would violate EarthCam's due process rights because the dispute

between EarthCam and Hermann lacked sufficient contact with the State of

Georgia.  The Court concluded that New Jersey law would apply to the contract

dispute between Hermann and EarthCam.

"A choice of law provision that relates only to the agreement will not

encompass" related claims.  Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1162

(11th Cir. 2009).  The choice of law provision in the Employment Agreement

relates only to the breach of the agreement itself.   "The contractual choice-of-law

provision [in Hermann's Employment Agreement] . . . can have no bearing on the

law controlling a tort action brought against a third person not a party to the

contract."  Barnes Grp., Inc. v. C & C Products, Inc., 716 F.2d 1023, 1043 (4th Cir.

1983); see also Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc., 485 F.3d

1233, 1246-47 (11th Cir. 2007) (concluding that despite a choice of law provision

that required application of Mexican law, tortious interference claim was governed

by the substantive law of Florida because Florida was the "principal location where

_____

Georgia because a non-solicitation restriction that applies to "any client of the
employer must contain a territorial restriction expressed in geographic terms."  See
Advance Tech. Consultants, Inc. v. RoadTrac, LLC, 551 S.E.2d 735, 738 (Ga. Ct.
App. 2001).  If one provision of a covenant not to compete is unenforceable, then
the entire agreement is unenforceable because Georgia law does not allow
severability of provisions for employment contracts.  Id. at 738.

the defendant's conduct occurred.").

EarthCam's tortious interference claim arises from Defendants' alleged acts of inducement and wrongful conduct that occurred in Georgia. The Court concludes that Georgia law applies to EarthCam's tortious interference claim. See Federated Rural Elec. Ins. Exchange v. R.D. Moody and Assoc., Inc., 468 F.3d 1322, 1326 (11th Cir. 2006) (applying Georgia law because plaintiffs did not sue for breach of contract, and the subrogation claim arose from acts committed in Georgia).

EarthCam does not dispute that Hermann's Employment Agreement is unenforceable in Georgia. The OxBlue Defendants thus cannot be held liable for tortious interference with provisions of a contract that is unenforceable in this State. See Stahl Headers, Inc. v. MacDonald, 214 Ga. App. 323, 324, 447 S.E.2d 320, 322 (Ga. Ct. App. 1994). The Court, therefore, grants the OxBlue Defendants' Motion for Summary Judgment on EarthCam's claim for tortious interference with Hermann's Employment Agreement.

### 2. *EarthCam's Claims Against Hermann*

#### i. Release

Under New Jersey law, "the scope of a release is determined by the intention of the parties as expressed in the terms of the particular instrument, considered in

the light of all the facts and circumstances."  Bilotti v. Accurate Forming Corp., 39

N.J. 184, 203 (N.J. 1963).  "A general release, not restricted by its terms to

particular claims or demands, ordinarily covers all claims and demands due at the

time of its execution and within the contemplation of the parties."  Id. at 204.

"When a release's language refers to "any and all" claims, as here, courts generally

do not permit exceptions."  Isetts v. Borough of Roseland, 364 N. J. Super. 247,

255-56 (App. Div. 2003).  The Court concludes that the August 18, 2013, letter,

written by Nizza to Hermann, is a general release of "all claims, liabilities, liens,

demands, and causes of action, known and unknown . . . which either [Hermann]

or EarthCam may have or claim to have against each other . . . " at the time of its

execution.  See Hermann's Statement of Material Facts at ¶ 60.

EarthCam argues that the mutual release is invalid for lack of mutuality

because Hermann did not sign the release, and because Hermann fraudulently

induced EarthCam to execute a mutual release.  These claims are without merit.

The August 18, 2013, letter, did not invite or require Hermann to sign the release.

The letter simply stated that it served as a release of all claims in consideration of a

check for Hermann's unpaid expenses.  EarthCam does not dispute that Hermann

accepted and cashed the check.  Agreement to a contract "may be evidenced by an

express written document or implied from the parties' conduct and the surrounding

circumstances." <u>Directech Delaware, Inc. v. Allstar Sattelite, Inc.</u>, No. 08-cv-3527, 2010 WL 1838573, at *3 (D. N.J. May 6, 2010) (applying New Jersey law) (internal quotation marks and citations omitted).  There is an enforceable contract between the EarthCam and Hermann because Hermann accepted EarthCam's proposal to mutually release all claims when he accepted and cashed the check.  <u>Id.</u> at *4 (finding that a failure to sign the contract was immaterial because Directech's performance on the contract manifested acceptance of the contract's terms).

     To state a claim for fraudulent inducement, a plaintiff must show "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." <u>Gennari v. Weichert Co. Realtors</u>, 148 N.J. 582, 610 (N.J. 1997).  EarthCam's inability to prove reliance is fatal to its fraudulent inducement claim.  The evidence here shows that EarthCam *induced Hermann* to sign the release in exchange for the settlement of his claim.  After Hermann threatened litigation, EarthCam agreed to pay his unpaid expenses only if Hermann signed a release.  At some point, the negotiations between the parties broke down, and EarthCam unilaterally sent Hermann an unsolicited offer to mutually release all claims on August 13, 2008, and a check for the expenses Hermann demanded EarthCam pay.  Hermann did not

make any material misrepresentations in connection with the general release, and

EarthCam did not rely on any material misrepresentations made by Hermann when

EarthCam unilaterally agreed to a mutual release of all claims the parties had

against each other.

To support its fraudulent inducement argument, EarthCam relies on an

isolated and irrelevant email exchange between Hermann and Nizza.

On July 7, 2008, Nizza emailed Hermann and stated that EarthCam required

departing employees to return EarthCam's property.  See Ex. B, attached to

Hermann's Statement of Material Facts.  Nizza also reminded Hermann of his

responsibilities under the Non-compete Agreement, and stated that "this email

serves as confirmation that you are not working for any of EarthCam's

suppliers/vendors or competitors."  Id.  Hermann wrote a lengthy reply to Nizza

discussing various issues unrelated to the dispute here, and concluded his email by

stating in a postscript that he "respected the non-compete."  See Ex. C, attached to

Hermann's Statement of Material Facts.  Nothing in this email exchange alludes to

the general release or any matter related to the general release.  To prove

fraudulent inducement, EarthCam is required to show that Hermann made a

material misrepresentation of fact, and EarthCam relied on that material

misrepresentation of fact in considering its decision to enter into a mutual release.

49

See Jewish Center of Sussex County v. Whale, 86 N.J. 619, 625-26 (N.J. 1981).

There is no evidence that Hermann made a material misrepresentation that induced

EarthCam to execute a mutual release. Instead, the evidence shows that EarthCam

insisted on the release's execution, and *induced Hermann* to accept the terms of the

general release by offering a check for $706.14.

Under the plain terms of the August 18, 2008, letter, EarthCam cannot assert

any claim against Hermann based on the alleged disclosure of trade secrets and

confidential information prior to August 13, 2008, including the claim that

Hermann misappropriated its trade secrets by transferring OxBlue 3019 to the

OxBlue Defendants. McCormack testified at his deposition that OxBlue 3019 was

available to OxBlue in July, 2008. McCormack Dep. 373-76. This testimony is

uncontested.

EarthCam contends that there is a factual dispute regarding when OxBlue

3019 was transferred to the OxBlue Defendants, and relies on a June 19, 2009,

email to argue that OxBlue 3019 was transferred in June, 2009. EarthCam argues

that because Hermann was uploading a large amount of data on an FTP site in

June, 2009, that data must have originated from OxBlue 3019. EarthCam's claim

is based on conjecture and speculation, and not on evidence in the record.

"Speculation does not create a *genuine* issue of fact; instead it creates a false issue,

the demolition of which is a primary goal of summary judgment." Cordoba v.

Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting Hedberg v. Ind. Bell

Tel. Co., 47 F.3d 928, 931-32 (7th Cir. 1995) (emphasis in original)).  EarthCam

has failed to present any evidence to rebut McCormack's testimony that OxBlue

3019 was transferred in July, 2008—before the general release was signed.

EarthCam's claims against Hermann that relate to the alleged disclosure of

information prior to August 13, 2008, including information contained on OxBlue

3019, are barred by the general release.

ii.   Trade Secrets

To the extent that EarthCam relies on email correspondence between

Hermann and the OxBlue Defendants after August 13, 2008, for its

misappropriation of trade secrets claim against Hermann, the Court's close

examination of these documents reveals that they do not contain any information

that constitutes a trade secret under Georgia law.  In Avnet v. Wyle Lab., Inc., the

Georgia Supreme Court held that the following information is not a trade secret

under the Georgia Trade Secrets Act if the information is in the employer's mind

rather than in some tangible form:

> the identity of . . . suppliers, customers' identities, customer needs,
> business practices and patterns which include the type of products
> clients purchase, the products sold but not delivered, specific client
> relations problems, client preferences, cost pricing, sales volume

51

> information, the amount clients are willing to pay, cost profit and
> price computation information as well as employee compensation
> capabilities and performance.

437 S.E.2d 302, 303 (Ga. 1993).  Hermann is free to use all the skills and

information he acquired at EarthCam in the absence of an enforceable restrictive

covenant that prevents him from disclosing or using the accumulated knowledge

acquired at EarthCam.  Stone v. Williams General Corp., 597 S.E.2d 456, 459 (Ga.

Ct. App. 2004) (overruled on other grounds).  Hermann's Employment Agreement

with EarthCam prohibits him from the disclosure or use of EarthCam's "trade

secrets" or "confidential information" during or after the termination of his

employment with EarthCam.  See Pl.'s Ex. A, attached to Ex. 50.

Hermann's general knowledge of EarthCam's customers, products, services

and strategies is not a trade secret under Georgia law.  To the extent that EarthCam

claims Hermann breached his contract by revealing "trade secrets" or "confidential

information" to the OxBlue Defendants, EarthCam's claim fails because trade

secrets and confidential information under New Jersey law "cannot merely be the

facility, skill or experience learned or developed during an employee's tenure with

an employer."  Richards Mfg. Co. v. Thomas & Betts Corp., CIV. 01-4677, 2005

WL 2373413 (D.N.J. Sept. 27, 2005) (quoting Ingersoll-Rand Co. v. Ciavatta, 110

N.J. 609, 629-30, 542 A.2d 879, 889 (1988)).  At most, the topics of discussion and

the alleged information revealed in the emails between Hermann and the OxBlue

Defendants are "merely within [Hermann's] mind . . . and [do] not constitute a

protectable trade secret."  Manuel v. Convergys Corp., 430 F.3d 1132, 1140

(11th Cir. 2005).  The email correspondence from 2009-2010 between Hermann

and the OxBlue Defendants that EarthCam relies on for its trade secret claim

suffers from the same flaw exhibited by other evidence presented by EarthCam in

this case: the failure to plead and prove that the information derives economic

value from the "element of secrecy or confidential information that is peculiar to

[EarthCam's] business and known only to it and its employees."  Id. (internal

quotation marks and citations omitted).  The following examples are illustrative of

the failure of evidence to support EarthCam's claim against Hermann for

misappropriation of trade secrets:

- EarthCam relies on a March 4, 2009, email between Hermann and

  McCormack to argue that Hermann disclosed confidential information

  regarding suppliers and pricing for EarthCam's solar products.  In this email,

  Hermann told McCormack that "EarthCam buys solar gear from Sunwize,

  and back in the day, the cameras could go for 3000 a pop with 250 per

  month.  Each solar might for 12000 a pop."  See Ex. 38, attached to

  EarthCam's Resp. to Hermann's Motion for Summary Judgment.  Hermann

explicitly stated in this email exchange that "*this is all from memory and not sure if this holds true.*" (emphasis added). As discussed in Section II(B)(1)(i) of this Order, EarthCam has not presented any evidence to show that its relationship with Sunwize is a trade secret. Hermann specified in the email that the information revealed was only in his mind, which is not a trade secret under Georgia law, and there is no evidence that this pricing information was known only to EarthCam and not to others generally in the industry. EarthCam also has failed to present evidence that the pricing information for solar cameras "derives economic value" from an element of secrecy that is known only to EarthCam and its employees.

- EarthCam claims that a March 16, 2009, email shows that Hermann asked McCormack if OxBlue wanted information on EarthCam's current solar technology, and Hermann suggested that he could get that information from Justin Mezzadari, a former EarthCam engineer. EarthCam's reliance on this email assumes that Hermann ultimately provided McCormack with information on EarthCam's "solar technology." See Ex. 38, attached to EarthCam's Resp. to Hermann's Motion for Summary Judgment. There is no evidence that he did, and the assumption constitutes conjecture and speculation. EarthCam also ignores the content of this email. Hermann

responded to McCormack's initial observation that "it appeared that [EarthCam] changed solar vendors to backdoorsolar.com and in the process of looking into that company we [sic] someone here stumbled on that number." Id.  McCormack's earlier email to Hermann indicates that information regarding EarthCam's solar suppliers was publicly available, and EarthCam does not explain why its "solar technology" "derives economic value" from an element of secrecy known only to EarthCam and its employees.

- EarthCam relies on emails between Hermann and McCormack from June 10, 2009, to June 24, 2009, to argue that Hermann disclosed confidential information regarding EarthCam's panoramic stitching and video archiving techniques for the Robotic Megapixel Camera.  See Exs. 40-42, attached to EarthCam's Resp. to Hermann's Motion for Summary Judgment.  EarthCam again does not explain why the panoramic stitching and video archiving techniques "derive economic value" from an element of secrecy that is known only to EarthCam and its employees.  EarthCam, its Vice President of Technology, and its lawyers, appear to assume that this information is "confidential."  Georgia law requires EarthCam to prove that these techniques are "trade secrets," and EarthCam has not met its burden to do so

55

here.  A close examination of these emails does not reveal any references to any EarthCam technology, or indicate that the technical procedures being discussed bear any relationship to EarthCam.  For instance, on June 11, 2009, Hermann wrote to McCormack and asked whether OxBlue's user interface could automatically download the ActiveX plugin, and whether the embedded buttons in OxBlue's graphical user interface could be converted to an ActiveX output.[16]  EarthCam argues that the questions Hermann asked McCormack revealed EarthCam's confidential information about video archiving because the inquiries were intended to provide a solution regarding how to control a Toshiba camera with the Firefox web browser.  This is an unreasonable concoction.  Toshiba is a camera produced by a Japanese conglomerate, and the ActiveX plugin is widely used in Internet browsers around the world.  No reasonable juror would infer that only EarthCam and its employees know how to use the ActiveX plugin to control a Toshiba camera with the Firefox web browser.  Even if the Court assumed that Hermann's proposed method to control a third party's camera with

---

[16] "ActiveX controls are small programs, sometimes called add-ons that are used on the Internet.  They can enhance your browsing experience by allowing animation or they can help with tasks such as installing security updates."  See http://www.microsoft.com/security/resources/activex-whatis.aspx.

software produced by a third party was unique to EarthCam, Hermann

revealed information "merely within [his] mind. . . and  [that] [does] not

constitute a protectable trade secret" under Georgia law.[17]  Manuel, 430 F.3d

at 1140.  The information allegedly revealed by Hermann in the June 2009

emails cannot be confidential information under New Jersey law because

"confidential information" "cannot merely be the facility, skill or experience

learned or developed during an employee's tenure with an employer."

Richards Mfg. Co., 2005 WL 2373413 (quoting Ingersoll-Rand Co., 110

N.J. 609, 629-30).[18]

---

[17] EarthCam's evidence, in fact, shows that Hermann did not reveal EarthCam's "trade secrets" regarding the functionality of the Toshiba camera because Hermann told McCormack that "I am going to make a call and find out exactly how EC client[s] use Firefox when controlling the Toshiba."  See Ex. 41, attached to EarthCam's Resp. to Hermann's Motion for Summary Judgment.  EarthCam claims that if its competitor reaches out to its customer to inquire about products produced by third parties, the competitor misappropriates and uses EarthCam's "trade secrets."  If Hermann had to call an EarthCam customer to inquire about the functionality of a Toshiba camera, then it cannot be a "trade secret" in the absence of evidence that the customer shared EarthCam's "trade secrets"—a nonsensical proposition in the first place because customers do not typically know a company's "trade secrets."

[18] While this list is illustrative, the Court has examined all the emails between Hermann and the OxBlue Defendants, and EarthCam's interpretation of these emails is unreasonable.  No reasonable juror would read these emails, and conclude that Hermann disclosed EarthCam's trade secrets or confidential information to the OxBlue Defendants.

Hermann unequivocally stated at his deposition that he did not disclose or use EarthCam's confidential information and trade secrets.  In light of Hermann's unequivocal testimony that EarthCam's confidential information was not disclosed or used, and the fact that EarthCam's circumstantial evidence is consistent with Hermann's testimony, there is no dispute of fact sufficient to deny Hermann a grant of summary judgment.  Penalty Kick, 318 F.3d at 1296.  Hermann's Motion for Summary Judgment on EarthCam's trade secrets claim is granted.

### 3.    OxBlue's Claims Against EarthCam

#### i.    Copyright Infringement

The Copyright Act allows a party which proves infringement to choose between actual damages or statutory damages at any time before the Court renders a final judgment.  17 U.S.C. § 504(c)(1).  If a plaintiff elects statutory damages, the plaintiff gives up the right to seek actual damages.  "[A]lthough the election may be made at any time before final judgment is rendered, once a plaintiff elects statutory damages he may no longer seek actual damages."  Twin Peaks Prods., Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1380 (2d Cir. 1993).  OxBlue stipulated that it is seeking only statutory damages and attorneys' fees.

Pursuant to § 412 of the Copyright Act "no award of statutory damages or of attorney's fees, as provided in sections 504 and 505, shall be made for—(1) any

infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless the registration is made within three months after first publication of the work." 17 U.S.C. § 412.

On October 17, 2006, OxBlue first published the OxBlue Specification. The OxBlue Specification was not registered with the Copyright Office until March 13, 2012. OxBlue is not entitled to statutory damages and attorneys' fees because the OxBlue Specification was not registered at the time the alleged infringement occurred, or within the 3-month safe harbor period between publication and registration. See M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1493 (11th Cir. 1990) (holding that attorneys' fees and statutory damages were unavailable because the copyright was not registered at the time the alleged infringement occurred).

OxBlue does not dispute that it is not entitled to statutory damages under the plain terms of Section 412, but it argues that statutory damages are not prohibited for infringement that occurs after the date of registration. OxBlue states that EarthCam has continued to incorporate new versions of the OxBlue Specification, and the publication of each new edition is a new infringement for purposes of

Section 412.  There is no legal basis for this claim.  "Every [Circuit] to consider the issue has held that infringement commences for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs."  Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 700-01 (9th Cir. 2008) (internal citations and quotation marks omitted); Bouchat v. Bon–Ton Dep't Stores, Inc., 506 F.3d 315, 330 (4th Cir. 2007); Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 158 (2d Cir. 2007); Johnson v. Jones, 149 F.3d 494, 506 (6th Cir. 1998); Mason v. Montgomery Data, Inc., 967 F.2d 135, 142–44 (5th Cir. 1992).

There is no dispute that the first act in a series of alleged acts of infringement of the OxBlue Specification occurred before the effective date of registration.  OxBlue is thus not entitled to statutory damages and attorneys' fees under the Copyright Act.  Id.  EarthCam's Motion for Summary Judgment on OxBlue's claim for copyright infringement is granted.

ii.     Claims Regarding Keyword Searches

OxBlue argues that EarthCam infringed the OxBlue trademark, and caused "initial interest confusion" by purchasing the term "oxblue" as a search engine keyword to divert users to EarthCam's website.  "Initial interest confusion" occurs "when a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated."

60

Promatek Indus., Ltd. v. Equitrac Corp., 300 F.3d 808, 812 (7th Cir. 2002).  The

Eleventh Circuit has not yet decided whether a trademark infringement claim based

on "initial interest confusion" is actionable under the Lanham Act.  SunTree Tech.

Inc. v. Ecosense Intern., Inc., 693 F.3d 1338, 1349 (11th Cir. 2012) (declining to

address the issue).  Several Circuits, however, have held that a claim for "initial

interest confusion" can be brought under the Lanham Act if the defendant

purchases plaintiff's trademark as a search engine keyword to divert users to the

defendant's website.  See 1-800 Contacts, Inc. v. Lens.com, Inc., 722 F.3d 1229,

1247 (10th Cir. 2013); Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,

638 F.3d 1137, 1154 (9th Cir. 2011).

     For the purpose of deciding EarthCam's Motion for Summary Judgment, the

Court assumes that a Lanham Act claim based on "initial interest confusion" is

actionable in this Circuit.  In the context of keyword searches, the Ninth Circuit

has held that the factors relevant to analyze whether there is a likelihood of "initial

interest confusion" are (1) the strength of the mark, (2) the evidence of actual

confusion, (3) the type of goods and degree of care likely to be exercised by the

purchaser, and (4) the labeling and appearance of the advertisements and the

surrounding context of the screen displaying the results page.  Network

Automation, Inc., 638 F.3d at 1154.  The Ninth and Tenth Circuit have further held

that the last factor—the labeling and appearance of the advertisements and the surrounding context of the screen displaying the search results—is the most critical in determining whether a likelihood of confusion exists in cases where the defendant has used a competitor's mark as a keyword search term.  Id.; see also 1-800 Contacts, 722 F.3d at 1245.

OxBlue has not addressed any of these factors, let alone presented any evidence of a likelihood of confusion based on these factors.  There is no evidence of the labeling and appearance of Work Zone Cam's advertisements and the surrounding context of the screen displaying the search results.  Nor is there any evidence in the record on how often customers were lured to the Work Zone Cam's website when they searched for OxBlue on the Internet.  See 1-800 Contacts, 722 F.3d at 1244 (holding that there was no likelihood of "initial interest confusion" because an expert report showed that customers clicked on the defendant's advertisement only 1.5% of the time that an advertisement was generated by an infringing keyword search term).  No evidence has been presented that would allow the Court to properly evaluate OxBlue's trademark infringement claim.

OxBlue's trademark infringement claim based on "initial interest confusion" is required to be dismissed because OxBlue failed to address or present evidence on any of the factors relevant to whether there is a likelihood of confusion.

EarthCam's Motion for Summary Judgment on OxBlue's trademark infringement claim is granted.

Because there is no evidence of a likelihood of confusion, OxBlue's claims for false designation of origin under the Lanham Act, unfair competition, and deceptive trade practices are without merit, and EarthCam's Motion for Summary Judgment is also granted on these claims. Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 265 (5th Cir. 1980)[19] (summarily dismissing claims for false designation of origin, unfair competition and deceptive trade practices because all of these claims require the plaintiff to demonstrate that there is a likelihood of confusion between the parties' products, and plaintiff's failure to show a likelihood of confusion required dismissal of all the claims).[20]

### iii.   False Advertising Claim

Section 43(a)(1)(B) of the Lanham Act prohibits false or misleading descriptions or representations of fact in commercial advertising or promotion that

---

[19] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981.

[20] In its Response to EarthCam's Motion for Summary Judgment, OxBlue implies that its state law claims are also based on EarthCam's use of the OxBlue Specification. This conclusory allegation is not supported by any argument or evidence of a likelihood of confusion. Conclusory allegations are insufficient to defeat a motion for summary judgment. See Ojeda, 410 F. App'x at 214.

misrepresent the nature, characteristics, qualities, or geographic origin of another's goods.  15 U.S.C. § 1125(a)(1)(B).  A false advertising claim under the Lanham Act requires the plaintiff to prove that (1) the advertisements were false or misleading, (2) the advertisements deceived, or had the capacity to deceive, consumers, (3) the deception had a material impact on purchasing decisions, (4) the misrepresented products affected interstate commerce, and (5) the plaintiff has been, or is likely to be, injured by the false advertising.  Hickson Corp. v. Northern Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004).  OxBlue has not presented any evidence that EarthCam's alleged misrepresentations about OxBlue's products had a material impact on a customer's purchasing decision.  Due to this failure, EarthCam is entitled to summary judgment on OxBlue's false advertising claim.

The Lanham Act prohibits false or misleading statements that are made in a "commercial advertising or promotion campaign."  15 U.S.C. § 1125(a)(1)(B).  "In order for representations to constitute 'commercial advertising or promotion' . . . they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services.  While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations (4) *must be disseminated sufficiently to the*

*relevant purchasing public to constitute 'advertising' or 'promotion' within the industry*." <u>SunTree Tech. Inc.</u>, 693 F.3d at 1349 (quoting <u>Gordon & Breach Sci. Publishers S.A. v. American Inst. Of Physics</u>, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994)) (emphasis added).

OxBlue also cannot prevail on a Lanham Act claim for false advertising based on Michaels' allegedly false representations made to Grunwald and McAleer. Isolated statements made by sales representatives are not sufficiently disseminated to the relevant purchasing public to constitute false advertising under the Lanham Act. <u>See</u> <u>Optimum Tech. Inc. v. Home Depot USA, Inc.</u>, No. 1:04 CV 3260 TWT, 2005 WL 3307508, at *5 (N.D. Ga. Dec. 5, 2005) (collecting cases).

OxBlue asserts that Joseph Nizza, EarthCam's Vice President, admitted that "such statements could have been communicated to others perhaps hundreds of times." He did not. On October 16, 2012, Nizza testified at his deposition that he did not know how many times EarthCam sales representatives told a potential customer that OxBlue uses experimental server software. Nizza Dep. at 72: 6-24. Nizza subsequently stated "yes" in response to a leading question from counsel that asked "it could be one time, it could be hundreds of time, is that fair? <u>Id.</u> This testimony does not establish that EarthCam representatives told potential customers that OxBlue used experimental server software "hundreds of times."

The testimony establishes that OxBlue does not have evidence of how often statements regarding experimental software were made by EarthCam's sales representatives because Nizza did not know how frequently the statements were made.

OxBlue's reliance on Nizza's speculative answer to support the claim that "such statements *could have been communicated* to others perhaps hundreds of times," is insufficient to avoid summary judgment (emphasis added).  "Speculation does not create a *genuine* issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment."  Cordoba, 419 F.3d at 1181 (quoting Hedberg, 47 F.3d at 931-32 (emphasis in original)).

EarthCam is also entitled to summary judgment on OxBlue's false advertising claim based on the chart that compared EarthCam's webcams with OxBlue's cameras, and highlighted the alleged advantages of EarthCam's webcams.  The chart was sent to one prospective customer.  "Where the customer market is particularly small[,] courts may find a statement to be sufficiently disseminated to constitute 'commercial advertising or promotion,' even though only distributed to a few customers (or even one)."  Suntree Tech, Inc., 693 F.3d at 1349 (internal quotation marks and citations omitted).  OxBlue has not presented any evidence regarding the size of the market for high-end, megapixel construction

66

cameras and webcams.

In the absence of evidence that indicates the size of the market in the industry, the chart's distribution to one customer does not constitute "commercial advertising or promotion" under the Lanham Act.  See Schutz Container Sys., Inc. v. Mauser Corp., 1:09-CV-3609-RWS, 2012 WL 1073153, at * 31 (N.D. Ga. Mar. 28, 2012) (granting summary judgment to the defendants because no reasonable juror would conclude that a statement made to only one customer constituted "commercial advertising or promotion" in the absence of evidence regarding the number of potential consumers in the market or the size or importance of the consumers to whom the statements were made).  EarthCam's Motion for Summary Judgment on the OxBlue Defendants' false advertising claim is granted.[21]

### 4.   *Motion to Reopen Discovery*

On October 1, 2013, after the parties moved for summary judgment, EarthCam filed a Motion to Reopen Limited Computer Forensic Discovery. Discovery closed in this case on August 30, 2013.  EarthCam requests the Court to

---

[21] In response to EarthCam's Motion for Summary Judgment, OxBlue included a claim for trade dress infringement under Section 43(a) of the Lanham Act. OxBlue's trade dress infringement claim was not included in OxBlue's Answer to the Second Amended Complaint, and it is not properly before the Court.  See Gilmour, 382 F.3d at 1314-1315.  OxBlue cannot amend its Complaint through argument in a brief opposing summary judgment, and it is not entitled to raise a trade dress infringement claim at this stage of the proceedings.  Id.

order the production of forensic images of certain OxBlue computers that were taken by a neutral expert in 2012. EarthCam also requests the Court to order the OxBlue Defendants to produce physical images of all devices that contained OxBlue 3019.

On January 20, 2012, the parties retained Gregg Freemyer of the Norcross Group as a neutral expert to evaluate the forensic evidence in this matter. On February 7, 2012, Mr. Freemyer created a forensic image of Defendant Mattern's computer and Correy Potts's computer. These computers were used to access FCR's customer account in 2011. On April 12, 2012, Freemyer issued a forensic report of his findings. On October 19, 2012, the Court granted EarthCam's request to expand Freemyer's forensic review to include the review of each email that mentions specifically or otherwise refers to EarthCam's products, services, capabilities, business strategies, pricing or other information and strategies to obtain such information other than from sources available to competitors and the public.

On January 15, 2013, Freemyer separated from his former firm, and informed the parties that he did not have access to his files or resources to complete the investigation. On April 17, 2013, the Court denied EarthCam's request to extend fact discovery, but allowed EarthCam to designate an out-of-time

68

forensic expert.  EarthCam retained Jim Persinger as a forensic expert.  On

April 13, 2013, after the parties failed to resolve their dispute regarding the scope

of Mr. Persinger's review, the Court ordered the parties to select a mediator to

resolve their dispute, and the parties retained Jim Vaughn to mediate.  On May 9,

2013, the parties agreed to a "Forensic Protocol ("Protocol").  Under the Protocol,

OxBlue's forensic expert, John deCraen, was required to provide Persinger with

forensic images of the computers used by Mattern and Potts in 2011, and "all 3019

data collected by [deCraen], related server system files collected by [deCraen] and

any respective screen captures created by [deCraen] for any 3019 data."  Notably,

the Protocol did not require the production of forensic images created by Mr.

Freemyer in 2012.

　　　EarthCam is unsatisfied with Mr. deCraen's production.  Based on a

speculative report written by Mr. Persinger, EarthCam argues that Mr. deCraen did

not utilize standardized forensic techniques to extract information from the

computers used to launch the so-called "brute force" attack in 2006, and access

FCR's account in 2011.  For example, EarthCam, among other things, asserts that

Mr. deCraen used a tool to extract information that prevented EarthCam from

determining when files that allegedly contained EarthCam's "trade secrets" were

last accessed by the OxBlue Defendants, and the tool utilized added 37 megabytes

69

of additional data that presumably overwrote deleted but still accessible data.  With respect to OxBlue 3019, EarthCam contends that deCraen produced logical images of the devices that contained OxBlue 3019, and that deCraen did not provide a copy of all the devices that contained data from OxBlue 3019.  EarthCam asserts that a forensic analysis of the physical drives that contained data from OxBlue 3019 is necessary to determine "the existence of any deleted files, the contents, the date of last use, and whether any of the data was moved."  EarthCam's Mot. to Reopen Discovery at 18.  The OxBlue Defendants dispute EarthCam's allegations and represent that they complied with the Protocol, and produced the required information.  The Court, however, does not need to determine whether any of EarthCam's allegations have merit, or whether the OxBlue Defendants complied with their discovery obligations, because EarthCam is not entitled to reopen discovery.

Persinger admits in his report that his analysis is speculative.  There is no evidence that the OxBlue Defendants destroyed or manipulated any information that was required to be produced by the Protocol.  EarthCam has not produced any evidence that additional discovery in this case will revive its claims against Hermann and the OxBlue Defendants.

On June 14, 2013, Persinger filed his expert report.  On July 18, 2013, the

OxBlue Defendants served deCraen's expert report on EarthCam.  On August 30, 2013, discovery closed in this matter.  On September 27, 2013, Hermann and the OxBlue Defendants moved for summary judgment on EarthCam's claims.  On October 1, 2013, EarthCam moved to reopen discovery.  EarthCam has not presented a valid reason for the considerable delay in moving to reopen discovery.  Persinger and deCraen's expert reports were available in July 2013.

EarthCam claims that "many of the issues in this motion did not arise until deCraen's deposition on the last day of discovery."  EarthCam's Reply at 15.  That EarthCam chose to depose deCraen on the last day of discovery does not then allow it to assert an eleventh hour claim to conduct still more discovery in this action.  EarthCam is responsible for the unreasonable delay in moving to reopen discovery in this matter.  Prejudice to Hermann and the OxBlue Defendants is presumed because they moved for summary judgment before EarthCam filed its Motion to Reopen Discovery.  See Ashmore v. Sec'y, Dep't of Transp., 503 F. App'x 683, 686 (11th Cir. 2013) (affirming the district court's denial of a motion to reopen discovery because "the [defendant] would have been prejudiced by additional discovery [since] it had already filed its motion for summary judgment.").

"Generally, a motion for additional discovery is properly denied where a

significant amount of discovery has already been obtained and further discovery would not be helpful." Artistic Entm't, Inc. v. City of Warner Robins, 331 F.3d 1196, 1202-03 (11th Cir. 2003) (citing Avirgan v. Hull, 932 F.2d 1572, 1580–81 (11th Cir.1991)).  The parties have litigated this dispute, with acrimony and rancor, for more than three years.  The litigation involved is based on facially suspect claims and similar counterclaims asserted in retaliation.  EarthCam had ample time to conduct discovery and a significant amount of discovery was obtained in this matter.  Additional discovery to gather information on OxBlue's computers would not be helpful because EarthCam seeks information related to the so-called "brute-force" attack launched in 2006, and the alleged "intrusion" into FCR's customer webpage in 2011.  EarthCam's claims related to these incidents fail as a matter of law, and additional discovery will not revive those claims.  The production of additional devices that contain data from "OxBlue 3019" is futile.  On May 17, 2013, EarthCam received four devices containing data from OxBlue 3019.  To date, EarthCam has failed to plead and prove that OxBlue 3019 contains EarthCam's trade secrets.  The Motion to Reopen Discovery is required to be denied.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment is **GRANTED** [232].

**IT IS FURTHER ORDERED** that the OxBlue Defendants' Motion for Summary Judgment is **GRANTED** [228].

**IT IS FURTHER ORDERED** that Defendant Hermann's Motion for Summary Judgment is **GRANTED** [230].

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Reopen Discovery is **DENIED** [237].

**IT IS FURTHER ORDERED** that the remaining Motions pending in this matter are **DENIED AS MOOT**.


**SO ORDERED** this 22nd day of September 2014.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE